Fowler vs. The City of Superior and others.

FOWLER, Appellant, vs. THE CITY OF SUPERIOR and others, Respondents.

| 85 | 411 |
| 108 | 139 |

| 85 | 411 |
| e115 | ³349 |
| q115 | ³350 |

*February 25·—June 21, 1893.*

*Municipal corporations: Special improvement bonds: Constitutional limit of indebtedness: Injunction.*

1. Special improvement bonds containing an unconditional promise of a city to pay, constitute an indebtedness of the city, within the meaning of sec. 3, art. XI. Const. (limiting the amount of indebtedness which a municipality may incur), although they recite that they are payable out of the proceeds of certain improvement assessments and are issued upon the faith and security of said assessments, and that their payment is made chargeable upon the property benefited by said improvements.

2. Bonds containing such promise and recitals are *held* to have been drawn and executed in accordance with the provisions of the charter of the city of Superior (ch. 124, Laws of 1891), under which the money to pay for improvements is to be provided either (1) by the issue of certificates which are payable only out of the assessments, of which they are virtually an assignment, or (2) by the issue of improvement bonds covering the assessments not paid in cash, which bonds are to be sold only at par and are to be paid when due by the city treasurer, such payment to be by him charged to the proper fund, but not being expressly limited to the assessments. The fact that the bonds are payable in gold, although the

Fowler vs. The City of Superior and others.

charter does not so provide, is immaterial. [WINSLOW, J., withholds his assent from the proposition that the city has power under its charter to bind itself generally by inserting a general promise to pay in an improvement bond, and deems the decision of that point unnecessary in this case.]

3. Although such bonds are a mere substitute for assessments which the city owns as a resource for their payment, they constitute, none the less, an indebtedness of the city, within the meaning of the constitution.

4. The issuance of such bonds in excess of the constitutional limit of indebtedness will be restrained at the suit of tax-payers, and it is no defense to say that if so issued they are void and not collectible and hence not an indebtedness of the city.

5. A court of equity has jurisdiction, at the suit of a tax-payer, to restrain the issuance of municipal bonds which *prima facie* import a debt in excess of the constitutional limit.

APPEAL from the Circuit Court for *Douglas* County. The facts are sufficiently stated in the opinion.

*Frederick H. Remington,* for the appellant, argued, among other things, that the bonds, upon their face, import an indebtedness of the city. *Fuller v. Chicago,* 89 Ill. 282–293; *Law v. People,* 87 id. 386; *Rodman v. Munson,* 13 Barb. 63, 188 (see 7 N. Y. 47); *Newell v. People,* 7 N. Y. 9. It is the meaning of the charter of the city of *Superior* that bonds of the character of the proposed bonds shall be indebtedness of the city. The charters of many cities provide that in no event shall the cost of the improvements become a city charge. See *Finney v. Oshkosh,* 18 Wis. 209; *Hall v. Chippewa Falls,* 47 id. 267; *Zwietusch v. Milwaukee,* 55 id. 369. An express inhibition against city liability was evidently considered necessary to prevent it. "Power to a municipal corporation to make local improvements, though the expense be directed in the constituent act to be assessed upon the property benefited, gives the corporation, in the absence of provisions evincing a different legislative intent, the implied power to make general contracts therefor." Dillon, Mun. Corp. (4th ed.), sec. 810; *Cumming v. Brook-*

*lyn*, 11 Paige, 596; *Mayer v. New York*, 63 N. Y. 455, 459; *Lutes v. Briggs*, 64 id. 404; *Galveston v. Heard*, 54 Tex. 420. The charter of *Superior* in this respect is like that of Janesville at the time the case of *Allen v. Janesville*, 35 Wis. 403, arose. See the authorities cited in that case, and also *U. S. v. Fort Scott*, 99 U. S. 152; *U. S. v. Clark Co.* 96 id. 211; *Wyandotte v. Zeitz*, 21 Kan. 649; *State v. Commissioners*, 37 Ohio St. 526; *Argenti v. San Francisco*, 16 Cal. 256; *Mills v. Gleason*, 11 Wis. 470; *State ex rel. Dean v. Madison*, 7 id. 688; *Ketchum v. Buffalo*, 14 N. Y. 356; Dillon, Mun. Corp. (4th ed.), secs. 117–120; *Morrison v. Bernards*, 36 N. J. Law, 219–222; *Leavenworth v. Mills*, 6 Kan. 288; *Atchison v. Leu*, 48 id. 138; *Reilly v. Albany*, 112 N. Y. 30–42.

*Phil. H. Perkins*, city attorney, for the respondents, contended: (1) The common council has no power to issue general street improvement bonds. (2) The power of the council to issue special street and harbor improvement bonds is unlimited. (3) The charter prescribes two entirely distinct and separate classes of bonds, general and special. (4) The charter makes specific and ample provisions for the payment of all special bonded indebtedness from the taxes assessed on the property benefited. (5) The charter requires the holders of all special improvement bonds to look for payment to the special fund provided therefor and, by implication, to that only. (6) The city bonds in question must be read the same as if the charter provisions making them chargeable to and payable out of the property benefited were incorporated therein. *Fuller v. Heath*, 89 Ill. 297; *Law v. People*, 87 Ill. 394; *U. S. v. Macon Co.* 99 U. S. 582; *Hall v. Chippewa Falls*, 47 Wis. 271; Cooley, Const. Lim. 196; Dillon, Mun. Corp. sec. 373; *Swift v. Williamsburgh*, 24 Barb. 427; *French v. Burlington*, 42 Iowa, 614; *Travelers' Ins. Co. v. Denver*, 11 Colo. 434, 24 Am. & Eng. Corp. Cas. 540; *Bates v. Gerber*, 82 Cal. 550; *Hunt v. Utica*,

18 N. Y. 442; *Grant v. Davenport*, 36 Iowa, 396. (7) The liability evidenced by the bonds in question is not a city liability, within the meaning of the city charter provisions. If the council assumes any authority to insert provisions for the purpose of giving the bonds the apparent character of city indebtedness, strictly so called, they, in so doing, exceed and are guilty of an abuse of the powers granted. *Veeder v. Lima*, 19 Wis. 298; Dillon, Mun. Corp. (4th ed.), sec. 449; Sutherland, Stat. Const. secs. 380, 459; *Bryan v. Page*, 51 Tex. 532; *Francis v. Troy*, 74 N. Y. 338; *Zottman v. San Francisco*, 20 Cal. 96; *Fletcher v. Oshkosh*, 18 Wis. 233; *Whalen v. La Crosse*, 16 id. 271; *Sacket v. New Albany*, 88 Ind. 473; *Yarnold v. Lawrence*, 15 Kan. 126. (8) For decisions as to the question of municipal liability under various charter and statute limitations expressed or implied, see *Travelers' Ins. Co. v. Denver*, 11 Colo. 434, 24 Am. & Eng. Corp. Cas. 540; *Baker v. Seattle*, 2 Wash. 576; *Hitchcock v. Galveston*, 96 U. S. 341; *Galveston v. Heard*, 54 Tex. 420; *Galveston v. Loonie*, id. 517; *Lake v. Williamsburg*, 4 Denio, 520; *Weston v. Syracuse*, 17 N. Y. 110; *Hunt v. Utica*, 18 N. Y. 442; *Second Nat. Bank v. Lansing*, 25 Mich. 208. (9) The liability evidenced by the bonds in question is not an indebtedness, within the meaning of the constitutional prohibition; but the appropriation of the funds in advance discharges the liabilities as they arise, thus anticipating and preventing such indebtedness. *People v. May*, 9 Colo. 404; *Valparaiso v. Gardner*, 97 Ind. 1; *Davenport v. Kleinschmidt*, 16 Am. & Eng. Corp. Cas. 301; *Springfield v. Edwards*, 84 Ill. 633; *Silkman v. Milwaukee*, 31 Wis. 555; *Fuller v. Heath*, 89 Ill. 297; *State v. McCauley*, 15 Cal. 430; *Koppikus v. Commissioners*, 16 id. 253; *McCauley v. Brooks*, id. 11; *People v. Pacheco*, 27 id. 176; *Grant v. Davenport*, 36 Iowa, 396; *French v. Burlington*, 42 Iowa, 614; *Appeal of Erie*, 91 Pa. St. 398; *Smith v. Dedham*, 144 Mass. 177; *Dively v. Cedar Falls*, 27 Iowa,

227; *Strieb v. Cox,* 111 Ind. 299; *Quill v. Indianapolis,* 124 id. 292; *State v. Medbery,* 7 Ohio St. 522; *State v. Parkinson,* 5 Nev. 15.

The following opinion was filed March 21, 1893:

ORTON, J. This action is brought by the plaintiff as the owner of taxable property in the city of *Superior,* and on behalf of other owners of taxable property in said city similarly interested, to enjoin said city and its officers from issuing, selling, or in any way disposing of the bonds of said city hereinafter described or any evidences of indebtedness whatever while the indebtedness of said city shall equal or exceed five per centum on the value of the taxable property in said city as shown by the last assessment for state and county taxes. A demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action was sustained by the circuit court, and this appeal is from said order and the judgment in the action.

It is sufficiently stated in the complaint and conceded on the argument that before the threatened issue of said bonds the city of *Superior* was already indebted exceeding five per centum on the value of the taxable property therein as ascertained by the last assessment for state and county taxes. It is also conceded that if the bonds, the issue of which is sought to be restrained, are evidence of the indebtedness of the city, they will be in violation of sec. 3, art. XI of the constitution of this state, and that the complaint states a good cause of action. The learned judge of said court says in his opinion sustaining the demurrer: "Understanding that the defendants elect to rely solely upon the question of whether the special bonds of the city of *Superior* mentioned in the complaint constitute municipal indebtedness within the meaning of sec. 3, art. XI of the constitution of this state, and waive all other questions,

that is the only question that has been considered or will be passed upon by the court." We shall therefore also consider and decide only that question.

The material parts of the proposed bonds are as follows:

"UNITED STATES OF AMERICA.
"STATE OF WISCONSIN.

"No........                                    $........
"CITY OF SUPERIOR.
" DOUGLAS COUNTY.
" IMPROVEMENT BOND.
"Installment............

"Know all men by these presents, that the city of *Superior*, in the county of Douglas and state of Wisconsin, acknowledges itself indebted to and promises to pay the bearer hereof the sum of .... dollars, lawful money of the United States of America, in gold coin of present standard of weight and fineness, to be paid on the .... day of ...., A. D. 18.., with interest thereon at the rate of six per centum per annum, payable semi-annually on the .... day of .... and the .... day of .... in each year, as evidenced by the semi-annual interest coupons hereto attached as they severally become due; both the interest and principal of this bond being payable at the National Bank of the Republic, in the city of New York, state of New York.

" The said principal sum and interest shall be payable out of the proceeds of the improvement assessments hereinafter mentioned, and this bond and accompanying coupons are issued upon the faith and security of said assessments."

Then follows a recital of the provisions of the charter and of the proceedings of the common council and board of public works, as the authority antecedent to the issue of the bonds, fully complied with, and that the cost of the improvement has been duly charged as an assessment against the property benefited thereby; and then:

" The payment of the principal and interest of this bond is made chargeable upon the property benefited by said improvement, as evidenced by a statement and schedule of such special assessments, on which the bonds are issued, as recorded in the office of the city clerk of said city of *Superior*."

Fowler vs. The City of Superior and others.

Then follows a *recital* of the various instalments of the bonds, and when payable; and then:

· "It is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of this bond have duly happened and been performed in regular and due form as required by law. ·

"In Testimony Whereof the city of *Superior*, in the county of Douglas and state of Wisconsin, has' caused this bond to be signed by its 'mayor and city clerk, and countersigned by its comptroller, and the seal of said city to be hereto attached, this .... day of ...., A. D. 189..

"......................　　　　......................

　　　　　　"City Clerk.　　　　　　　　　　Mayor.

　　"Countersigned,............................

　　　　　　　　　　　　　　"City Comptroller."

Form of coupon attached:

"THE CITY OF SUPERIOR.

"No...........　　　　　　　　　　$........

　"Will pay the bearer at the National Bank of the Republic, in the city of New York, and state of New York, on the .... day of ...., .............. dollars, being six months' interest due that day on improvement bond No. .... of installment ...., for $ ..., issued for ...........

"B. J. Van Vleck,　　　　　　John W. Scott,

　　　　"City Clerk. ·　　　　　·　·　　　Mayor."

It is averred in the complaint that everything required to be done by the charter was done in reference to, the issuing of the bonds, which is virtually an averment that the bonds were issued in accordance with the charter, The material and essential portions of the bond are the first part, concluding with "State of New York," or a "*simplex obligatio*," and the signing or execution. All other parts of the bond are *recitals* merely. There are no words of qualification, proviso, or condition.

1. The city of *Superior* unconditionally and absolutely acknowledges itself to be *indebted* to and *promises* to pay the bearer the sum of —— principal, and semi-annual interest. First recital: They "shall be payable out of the

proceeds of the improvement assessments hereinafter mentioned;" "and this bond and accompanying coupons are issued on the faith and *security* of said assessments." The first is a mere fact or matter of information *recited*, in which the bondholder has not the slightest interest. It is quite immaterial to him out of what fund the city will pay the bond. He is nowhere bound to look to that fund for payment. There is no condition that the bond shall be payable *only* out of that fund, or that it shall not be payable out of the general fund. The second recital is a matter of interest to the bondholder, for the city pledges this fund as *security* collateral to the bond. The use of the word "faith," if it means anything, makes such pledge irrevocable, and gives the bondholder an additional resource out of which he can enforce payment. But the bondholder is not bound to do so, either actually or exclusively. Third recital: The principal and interest "is chargeable" and "has been charged" upon the property benefited by the improvement. This information only interests the bondholder in having security in addition to the city's general liability on the bond. The bondholder is further informed that a "statement and schedule of such special assessments on which the bonds are issued" are recorded in the office of the city clerk. Sec. 135 of the charter of the city (ch. 124, Laws of 1891) throws some light on the use to be made of such assessments. "The city treasurer shall pay the interest on and principal of said bonds as the same become due, *and charge the amount to the proper fund.*" That is, the treasurer shall pay this bond at the National Bank of the Republic in the city of New York, and then charge the same to the assessment fund. He is not bound to pay it out of the moneys as proceeds of the assessments, for there may be no funds in the treasury belonging to this fund; but pay he must, and out of money in the treasury. The city is then *reimbursed* out of the fund when collected, and

in this way the principal and interest are chargeable and charged to the proper fund. This must be the meaning of these clauses or recitals of the bond relating to the assessments, for they can have no other meaning, except as mere security to the bondholders. The city is *bound absolutely* to pay the bond, principal and semi-annual interest, when due. The bearer or bondholder *is not bound* by any word, sentence, or clause of the bond, or by any condition, for it has no condition whatever in it. From the inspection of the bond itself the conclusion is inevitable that on its face it imports an absolute indebtedness and general liability of the city of *Superior*.

This conclusion is not forced or doubtful, but is so clear and unquestionable as to scarcely need the support of the decision of a court. I shall therefore refer only, or mainly, to the authorities cited by the learned counsel of the appellant in his brief. In *Fuller v. Chicago*, 89 Ill. 282, the city issued warrants on the treasurer, payable on a specified day, without interest or grace. They recited that they were "*payable out of taxes levied for that fiscal year*," and that the taxes had been levied; *that " they will be paid out of the taxes then levied."* The court said: "These recitals do not change the legal effect of these instruments. They do not *limit* the right of the holder to payment out of these taxes." "They purport to be indebtedness;" and they were held unconstitutional, as the city had already exceeded the limit of five per centum on the taxable property of the city. In *Sage v. Brooklyn*, 89 N. Y. 190, the city comptroller shall pay to the person to whom damages are allowed the amount of such damages, and the persons benefited shall pay for the improvement, as in other cases. The damages were held a general liability of the city, and the court said: "It is not inconsistent with the theory that the municipality may be required to pay the cost of the improvement in anticipation of the collection of the assessments therefor."

This is clearly the theory ,of this bond. The city issues its bonds to procure ready money with which to make the improvement, and is then reimbursed out of the assessments when collected. In *U. S. v. Fort Scott*, 99 U. S. 152, the bonds were based upon and chargeable to the assessments by similar language. The city was held generally liable. The court says : " Experience informs us that the city would have met with serious if not insuperable obstacles in its negotiations had the bonds upon their face in unmistakable terms declared that the purchaser had no security beyond the assessments upon the particular property improved;" and reasons further that good faith required an explicit avowal of such a purpose in the bond itself. In *U. S. v. Clark Co.* 96 U. S. 211, county bonds issued on subscription for stock in a railroad company are based on a tax levied to pay the same. It was held that a judgment for interest on the bonds was payable out of the general funds of the county, and that the tax was additional *security* for the payment of the debt. In *Wyandotte v. Zeitz*, 21 Kan. 649, the city had issued bonds for building sidewalks, as they had power to do, and the money to pay them with had to be collected as special taxes from abutting lot owners. It was held that judgment was properly rendered against the city on them, and that the bonds should have been paid at maturity, without regard to whether the tax had been collected or not, and that the assessments against the abutting ·property were to be made available to *reimburse* the city therefor. See, also, *State v. Commissioners*, 37 Ohio St. 526.

In *Argenti v. San Francisco*, 16 Cal. 256, warrants had been issued on contracts for street improvements, and assessments had been made on adjacent property to pay two thirds of the expense. It was held that the city was primarily liable, and could look to the assessments to meet the expense, and that there was no privity between the contractors holding the warrants and the property or the

property owners. ˙ This last reason is conclusive against the right of bondholders in such cases to enforce the collection of assessments against the property benefited by the improvement. Their remedy must be against the city, the only other party to the contract. When the city has issued its bonds to obtain money to make local improvements, in all such cases the assessments belong to the city, and when collected go into its general fund as a reimbursement for the payment of the bonds. *Mayer v. New York,* 63 N. Y. 455. In this case the court says: " The city treasury is entitled to ultimate reimbursement from the owner of lands which may be locally assessed. It receives the money collected through local assessments *in its own right,* and not as agent or depository either of the landowners or the holders of the bonds. In *Morrison v. Bernards,* 36 N. J. Law, 219, the reasoning of the court is that the law would not authorize the municipality to issue bonds by which nobody is bound, and that an *obligor* and *obligation* imply liability. The regulation by which assessments are made upon particular lands can otherwise be carried into full effect. *" With these matters the bondholder has no connection."* See, also, *Leavenworth v. Mills,* 6 Kan. 288; *Atchison v. Leu,* 48 Kan. 138; *Reilly v. Albany,* 112 N. Y. 30–42. The authorities cited by the learned counsel of the respondents as adverse to the above cases do not appear to be applicable to the peculiar terms of this bond. There are other cases in the excellent brief of the appellant's counsel to which reference may be made. The above cases contain reasons more important than the decisions as such, in determining whether this bond imports indebtedness against the city generally. These cases are sufficient, if any are needed, to justify the above conclusion.

2. This bond is drawn in accordance with the city charter. To determine this question I shall refer only to such provisions of the charter as relate specially to it. Refer-

ence to provisions having only a remote bearing, if any, upon the subject, tends only to confuse the question. The charter (ch. 124, Laws of 1891) contains two plans or schemes for paying the contractor or providing money to pay for the improvement. The first is by " certificates." These certificates are as to " each parcel of land against which benefits have been assessed for the amount chargeable to said lot." Sec. 128. The amount of these certificates and sufficient to pay interest on them are placed in the next tax roll and collected as other taxes. Sec. 129. If the contract provides for payment in these certificates, the assessments or taxes to pay them are virtually assigned to the contractor, and when collected in money he receives it, and that is the end of it. Sec. 130. The contract may provide for payment in part by certificates and part in cash or part in improvement bonds, or it may provide for payment wholly in "improvement bonds" or the proceeds thereof. All of these matters are provided for in the contract. Sec. 130. The certificates, as a matter of course, are payable *only* in the assessments or proceeds of the tax which are assigned to the holder. There are many cases cited in respondents' brief relating to such certificates or warrants payable *only* out of the assessments. (1) The contractor is to be paid in certificates; (2) in cash or the proceeds of improvement bonds when sold; (3) the contractor is paid in such bonds, and he may take them at par as payment in full. But the charter provides for the issue of only two securities or evidences of indebtedness, or perhaps they may be called *negotiable* securities. The *first* are the certificates. They draw interest at the legal rate. After nine months their legality cannot be questioned. They may be transferred by indorsement. Why are not these certificates *public* securities, which may be sold in market for cash and at par? There is only one reason why,— *they are only payable in and limited to the amount*

*of the assessments.* They are virtually an assignment only of the assessments. The holder can look only to the assessments or the taxes for them for payment. They would have in market only the questionable credit and value of "tax certificates." Could the money necessary to make the improvement be obtained by their sale in market? Evidently not.

*Second.* There is another scheme in the charter, and that is of the issue by the common council of what are called "improvement bonds." These bonds, in the aggregate, cover the assessments which have not been paid in cash. This is the plan to obtain the money so that the whole improvement may be made and paid for in cash. The object of this plan is to raise the money, and all of it, necessary for such purpose. Therefore these bonds must be sold only *at par.* Is it possible that they can be sold at par? The certificates certainly could not be sold at par. If these bonds are payable only out of the assessments or taxes on the lots, and *limited* to such assessments, like the certificates, they would not only *not* sell at par, but they would not sell *at all,* for they run a much longer time at less interest, and have no limitation of time within which their legality may be questioned. If they are so confined to the assessments, they are securities inferior to the certificates. There are the very best of reasons why the law should not so provide. There is no provision in the charter that limits the payment of these bonds to the assessments. They are to be payable generally like any other public security. They are to be paid by the city treasurer, principal and interest, when due, and then he charges such payment to the assessment fund. Sec. 135.

It is sufficient to say that the bonds were issued and executed strictly according to secs. 132, 133 of the charter, and all the recitals in them are according to various provisions of the charter. The bonds themselves not only import a general indebtedness of the city, but they were

required to be so drawn by the charter, and such was not only the intention of the law but of the officers who executed them. But it is objected that the charter does not provide that the principal shall be payable in gold. They are to be payable in the lawful money of the United States, and gold is such. Whether gold will be worth a premium when the time of payment arrives is only a matter of conjecture. We have no right to so assume as a fact in passing upon the question at this time.

There are some collateral questions which have been raised, the consideration of which will be brief. It is said that the issue of these bonds does not increase the indebtedness of the city, because they are a mere substitute for the assessments, which the city owns as a *resource* for their payment. When the city sells the bonds the money goes into its treasury as the same kind of substitute or offset. It is the *indebtedness* of the city the constitution limits, and nothing else can be considered than that. But the case cited by the appellant's counsel of *Council Bluffs v. Stewart*, 51 Iowa, 385, is sufficient on that question. The language of the constitution, " become *indebted* in any manner or for any purpose," is to be understood in its commonly accepted sense. Cannot one become indebted if he has pecuniary resources sufficient to pay it?

Again, it is said that if these bonds are issued in violation of the constitution they are void and the city may defend against their collection, and are not, therefore, indebtedness of the city. But that is not this case. The bondholders are not here seeking the collection of the bonds, and the city is not defending against them. The tax-payers are seeking to enjoin the city and its officers from issuing the bonds and becoming indebted thereby in violation of the constitution; and, if they are unconstitutional, they should be enjoined from thus violating the constitution, and the material question is, Do they import indebtedness of the city? The constitution could never be

*violated* or *enforced* on such a theory. It would be the same if the bonds of the city were threatened to be issued in violation of law. It is immaterial to the question here whether the bonds could be successfully defended against by the city or not.

This leads us naturally to the only other question in the case,— whether the court has jurisdiction in such a case. It must be kept in view that the jurisdiction of the court is invoked to prevent or restrain a threatened violation of the constitution. It is to prevent the issuing of city bonds which *prima facie* import a city debt in excess of the constitutional limit. The question whether they may be void or voidable by the city as against the *bona fide* holders thereof cannot be tried and disposed of in *their absence.* The jurisdiction of a court of equity in such a case has been often sustained by this court in many cases. *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167; *Judd v. Fox Lake,* 28 Wis. 583; *Lawson v. Schnellen,* 33 Wis. 288; *Willard v. Comstock,* 58 Wis. 565; *Peck v. School District,* 21 Wis. 516, and many other cases. It is to restrain the threatened imposition of an unlawful burden upon the property of the tax-payers of the city. If this is not the proper remedy, then there is none whatever. If the bonds will be constitutional, lawful, and valid, the tax-payers have no cause of action, as a matter of course.

With due deference to the able opinion of the learned judge who decided this case at the circuit, I may be allowed to say that his opinion is rested on cases where the charter provisions and the terms of the bonds are essentially different from those here considered, and the authorities are not applicable. We are of the opinion that the complaint states a good cause of action, and the demurrer should have been overruled.

The circuit court having sustained the demurrer and rendered judgment against the plaintiff in the action, and the

Fowler vs. The City of Superior and others.

plaintiff having appealed from both the order sustaining the demurrer and the judgment, the order and judgment of the circuit court are reversed, and the cause remanded for a new trial.

WINSLOW, J.    I concur in the result reached by the court in this case, namely, that the issue of the proposed bonds should be enjoined, but I am not prepared to assent to the proposition that the city has power under its charter to bind itself generally by inserting a general promise to pay in an improvement bond, nor do I think such holding necessary in the decision of this case.    As presented to my mind, the situation is this: If the city has power to pledge its credit generally to pay these bonds, then their issuance is illegal because the constitutional limit of city indebtedness will be exceeded.    If, on the other hand, the city has not power to bind itself and its credit generally, these bonds are illegal because they carry on their face an unconditional promise by the city to pay the bond, and thus *prima facie* import a city indebtedness which the city cannot lawfully incur.    In either event their issuance should, in my judgment, be enjoined.

I shall not undertake to review the various provisions of the city charter with reference to the power of the city to bind itself generally to pay improvement bonds.    It must suffice to say that, in my opinion, it is extremely doubtful whether under the charter any such power exists.    In any event, I do not wish to be understood as assenting to the proposition that the city has such power.

*By the Court.*— The order and judgment of the circuit court are reversed, and the cause remanded for a new trial.

PINNEY, J., took no part.

A motion for a rehearing was denied June 21, 1893.