UNCAS NATIONAL BANK, Appellant, vs. CITY OF SUPERIOR, Respondent.

*September 6—October 21, 1902.*

*Municipal corporations: Street improvements: Power to issue general bonds: Estoppel: Ratification.*

1. Under the charter of 1889 (ch. 152) of the city of Superior, providing among other things that in the first instance the cost of improving streets shall be chargeable to the abutting lots in proportion to the benefits accruing thereto, and the amount thereof collected as a special tax against the property; that the city may issue improvement bonds to cover unpaid assessments, which bonds shall "contain such recitals as may be necessary to show that they are chargeable to particular property, specifying the same;" and restricting the power of the common council to issue bonds to certain specified purposes only, not including street improvements, it is *held* that the city had no power to issue general bonds for street improvements. *Fowler v. Superior,* 85 Wis. 411 (arising under the charter of 1891—ch. 124), distinguished.

2. Where the provisions of a city charter show plainly that special improvements shall in the first instance be paid for by the abutting property, a contrary inference will not arise from the mere fact that the special assessments authorized for that purpose will not be sufficient to pay the improvement bonds and interest, where the deficit will be very slight.

3. Where a city had no power to issue certain bonds, no recital therein will estop the city from defending on that ground.

4. Bonds issued by a city without authority cannot be subsequently ratified by it so as to make them valid.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

This action is to recover the amount of two bonds of $500 each and accrued interest, issued by the city of *Superior* under circumstances hereinafter stated. The following is a copy of one of said bonds:

"UNITED STATES OF AMERICA,
"STATE OF WISCONSIN.

"No. 1394. Dollars 500.

"CITY OF SUPERIOR.
*"Street Improvement Bond.*
"COUNTY OF DOUGLAS.

*"Know all men by these presents,* that the *City of Superior,* in the County of Douglas, State of Wisconsin, for value received, hereby acknowledges itself indebted to and promises the bearer hereof the sum of Five Hundred Dollars, lawful money of the United States of America, to be paid on the 2nd day of January, A. D. 1898, redeemable at the pleasure of the said *City of Superior* after the 2nd day of January, A. D. 1896, with interest thereon, payable semiannually on the 2nd days of July and January in each year, as evidenced by the semiannual coupons hereto attached, as they severally become due. Both the principal and interest of this bond being payable at the National Bank of the Republic in the city and state of New York.

"This bond is issued by authority of Chapter 16 of the Charter of the *City of Superior,* approved March 23rd, 1889, and by a resolution duly passed, approved, and published in said *City of Superior,* and State of Wisconsin, bearing date the 28th day of May, 1891. This bond is one of thirty-two bonds numbered from 1,375 to 1,406, inclusive, the aggregate amount of which is Fifteen Thousand Eight Hundred 00-100 Dollars, and is issued for the purpose of defraying the cost of constructing the improvement on Lamborn Avenue, between dock line on Howard's Pocket and North Third Street, and on account of such assessment made upon the property abut-

ting upon said Avenue between said points for such improvement as the owners have not elected to pay.

"The payment of the principal and interest of this bond is made chargeable upon the property abutting upon said Avenue between said points, as evidenced by a statement and schedule of such special assessments on which the bonds are issued as recorded in the office of the City Clerk of said *City of Superior*. And it is hereby certified and recited that all the acts, conditions, and things required to be done precedent to and in the issuing of this bond have fully happened and been performed in regular and due form as required by law.

"The full faith and credit of 'the *City of Superior,* Douglas County, and State of Wisconsin, is hereby irrevocably pledged for the prompt payment of this bond, both principal and interest. In testimony whereof, the said *City of Superior,* County of Douglas, and State of Wisconsin, has caused this bond to be signed by its Mayor and City Clerk, and the seal of said City to be hereto attached, this 2nd day of January, A. D. 1891.

"W. J. Darges, City Clerk,
"Martin Pattison, Mayor.

"Countersigned,
"Lewis Larson, Comptroller."

The city admitted the making of the bonds and default in payment of interest. It alleged that these bonds were issued in part payment of the cost of improving Lamborn avenue, under subch. 16, ch. 152, Laws of 1889, as special improvement bonds, and that the city had no power to make such improvement and make the cost a general city indebtedness, and the city had no power to issue general bonds of the city for such purpose. It was also alleged that the city did not provide for the collection of a direct annual tax, as required by sec. 3, art. XI, of the constitution, etc.

A jury was waived, and the case was tried by the court. Findings of fact were duly made substantially as follows: The plaintiff was the owner of the bonds in question. About July 2, 1898, plaintiff and defendant entered into an agreement to extend the time of payment of said bonds until July 2,

1908, at a reduced rate of interest, to wit, five per cent., but, in case of failure to pay interest, the bond was to become due at the option of the holder. Defendant paid the interest until 1901, when it defaulted. Plaintiff declared its option to consider the whole amount due, and the sum of $1,000 and interest was due thereon. The court then traces the history of the issue of the bonds, and finds that the same were part of the issue of $15,800 of bonds for improvements made upon Lamborn avenue pursuant to the requirements of ch. 16 of the charter, and which was assessed against the abutting property, as was required thereby, and which proceedings were regular in accordance with the charter. The resolutions and notices were put and recorded in the proper books kept by the city, which were public records, and open to the inspection of all persons. The bonds so issued were thirty-two in number, each for $500, except the last, which was for $300, and were to mature absolutely on January 2, 1898, and were payable at the defendant's option after January 2, 1896, and bore six per cent. interest, payable semiannually, evidenced by regular coupons attached thereto. In the year 1891 the city extended on its tax roll a special improvement tax against the property benefited by the improvement, amounting to $3,160 principal, and interest on the entire issue at the agreed rate, and thereafter continued imposing and extending such tax from year to year thereafter as follows: 1891, principal, $3,160, interest on $15,800; 1892, principal, $3,160, interest on $12,640; 1893, principal, $3,160, interest on $9,840; 1894, principal, $3,160, interest on $6,320; 1895, principal, $3,160, interest on $3,160. The city has collected all of said tax except a small amount. March 18, 1898, the city paid two of said bonds out of its general fund. Such bonds were listed by the city officers as "City of Superior Special Bond Indebtedness." The court further found that the plaintiff relied on the recitals in said bonds and had no actual notice of any irregularities in the issue of the same.

The court found as matters of law that the bonds sued upon were general bonds of the city; that the special assessment upon property benefited was not equivalent to the "direct annual tax" required by sec. 3, art. XI of the constitution, because said special taxes were not sufficient to pay said bonds at maturity, and because they were not a direct annual tax within the meaning of the constitution, but a special tax upon a particular portion only of the taxable property of the municipality, and the bonds were therefore void when issued; that the recitals in the bonds did not estop the city from setting up as a defense noncompliance with the provisions of the constitution; that the act of the city in paying interest and obtaining an extension of time did not operate to validate said bonds by way of ratification, and that the bonds could not be enforced in this direct action upon them. Judgment was entered dismissing the action, from which plaintiff has taken this appeal.

For the appellant there was a brief by *W. E. Pickering* and *E. F. McCausland,* and oral argument by *Mr. McCausland.*

*Thomas E. Lyons,* attorney, and *A. L. Sanborn,* of counsel, for the respondent.

BARDEEN, J. The trial court was undoubtedly correct in finding that the bonds in suit were in form general bonds of the defendant city. Assuming that they are such, the question is raised whether the city, under its charter, had any power to issue general city obligations in payment of special improvements of the character mentioned in the statement. This question is not entirely free from embarrassment, as will be hereinafter noted. A correct answer can only be reached by a consideration and construction of the various charter provisions applicable to the situation. To reach such conclusion it is necessary at the outset to make a brief survey of the powers of the city and limitations contained in the charter

with reference to bond issues, and with reference to the manner in which street improvements shall be made and paid for.

The bonds in suit were issued under the charter of 1889, known as "Chapter 152." By subch. 13 all funds in the city treasury, except school funds, library funds, and funds collected on special assessments, shall be under the control of the common council. Sec. 92. The city treasurer is specifically prohibited from paying out any funds in his hands which shall be appropriated by law for any special purpose, except for the purposes for which said funds are specifically appropriated, any direction of the city council to the contrary notwithstanding. Sec. 93. No money shall be appropriated for any purpose whatever except such as is expressly authorized by the charter. Sec. 94. The council may designate the banks in which city funds shall be deposited, and the comptroller is authorized to advertise for bids for such deposits. Secs. 98, 99. Sufficient portion of the moneys received from licenses of all kinds to pay all interest on the outstanding bonded indebtedness of the city and five per cent. of the principal shall be deposited in such banks as the council may contract with, the bank to pay interest at not less than four per cent. per annum. All moneys belonging to such sinking fund shall be paid into said bank as soon as collected, interest accruing to be added to the principal, and the bank is to pay the interest on bonds as fast as it becomes due. Sec. 102. Another important provision, and one of great significance in this litigation, is contained in sec. 103. It says:

"The common council shall have authority to issue bonds for the following purposes only: (1) Building public buildings for the use of the city. (2) Purchase of apparatus for fire protection. (3) Construction of main sewers. (4) Water-works. (5) Public parks. (6) Refunding municipal indebtedness. (7) Building bridges."

Turning now to subch. 16 of the charter, we find specific grants of power as to city improvements, and careful regula-

tions of the method of procedure. The city is given authority to establish grades and to open and pave streets. Sec. 143 provides *that in the first instance* the grading, paving, or improvement of any street shall be chargeable to the lots or parcels of land abutting on such streets, in proportion to the benefits accruing thereto. Subsequent sections designate the course to be pursued by the council and other officers as to the doing of the work and the making of the assessments. When a contract has been let to do such work, it may provide that the amounts chargeable to abutting real estate may be paid with certificates against the lots, or in improvement bonds, or in certificates and part cash, or improvement bonds, or both. Sec. 157. After the amount chargeable to abutting real estate has been finally determined, the council may cause a notice to be published in the official paper that a contract has been let, or is about to be let, for such improvements, and that the amount chargeable to abutting real estate has been determined, and that it is proposed to issue bonds chargeable to such real estate, covering all said assessments, except in cases where the owner elects to pay in cash. Sec. 158. The following section provides that the city may issue improvement bonds covering all the unpaid assessments, which bonds are to be signed by the mayor and clerk, duly sealed, and "contain such recitals as may be necessary to show that they are chargeable to particular property, specifying the same, and the number and amount of said bonds." Such bonds are to be semiannual interest coupon bonds, payable at the option of the city after five years, and absolutely at the expiration of seven years from date, and are to bear interest not exceeding six per cent. Sec. 160. The city treasurer shall pay the interest on and principal of the bonds as the same becomes due, and charge the amount to the proper fund. Sec. 162. Each year after the issuing of said bonds one fifth of the amount of the special assessment against each parcel of property, with six per cent. interest on the amount of the assessment then un-

paid, shall be extended on the tax roll against such property as a special tax, and, when collected, shall be credited to the fund against which payment of said bonds is charged. Sec. 163.

These, in brief, are the provisions of the city charter having relation to the bond issue under consideration. On the one side it is argued that there is nothing in the charter tending to show that the improvement bonds should be special, and no real prohibition against the issue of general city bonds for street improvements. On the other it is asserted that the city has neither the power to issue general bonds for any such purpose nor power to levy taxes to pay the same. The matter which meets our attention when considering the first contention mentioned is the language of sec. 103. It says "the common council shall have authority to issue bonds for the following purposes *only,*" stating the purposes. It is clearly a grant of power with a restriction. It has reference to the issue of general city bonds. It limits the authority to issue such bonds to the purposes stated. The language is clear and unambiguous, and must be interpreted or construed as it reads. The use of the word "only" is clearly restrictive, and excludes as clearly as language can the idea that the council can issue general city bonds for purposes other than those expressed. No argument can break the force of language of such plain intent. Unless there is something in the language of subch. 16 to do away with the conclusive effect of this section, the contention of the plaintiff is overthrown at the outset. Referring to the provisions of ch. 16, we find it distinctly stated that in the first instance streets shall be improved at the expense of abutting property. The statement that such improvements shall be paid for by the abutting property clearly excludes the idea that it shall be paid for in any other way. If such improvements are not paid in cash by such owner, then the city may issue improvement bonds, which bonds shall recite that they are chargeable to particular property. A special

tax shall be levied against said property each year, and, when collected, credited to the fund against which the payment of said bonds is charged; and the city treasurer shall pay the interest and principal of the bonds as the same becomes due, and charge to the proper fund. By secs. 92, 93, the funds collected on special assessments are taken from the control of the council, and cannot be lawfully diverted for other purposes. The treasurer may make payments without leave of the council, and may defeat any attempt by the council to divert the fund by a refusal to pay. The legislative intention that special improvements of streets in the first instance should be paid by the abutting property, and in no other way, is so manifest that it seems almost useless to argue it. A contrary inference, assumed to arise from the fact that the tax authorized to be levied would not be quite sufficient to pay the bonds and interest, cannot be entertained. If the city cares for its sinking fund in the manner pointed out by the charter, the deficit, if any, would be so slight that an argument cannot be based upon the assumption.

Reviewing the situation, we have the express limitation upon the power of the council to issue bonds, the provision that the streets in the first instance shall be improved at the expense of the lotowners, the further provision that the bonds shall recite that they are chargeable to particular property, and the requirement for the collection of a special tax each year against such property for a fund to pay the same. If this does not evidence a plain legislative purpose contrary to plaintiff's contention, we confess our inability to appreciate the force of the language used. We think it very clear that the city had no power to issue general bonds to pay for special improvements. If such power does not exist, it would seem to result, as a necessary legal corollary, that the power to levy general taxes to liquidate such bonds does not exist. No express power is given by the charter, and no provision of which we are aware is broad enough to sustain such

power arising by implication. The power to improve streets, the power to issue bonds, may imply the power to tax if the general power is unlimited; but such implication is repelled by the grant of a special taxing power adequate to meet the intended purpose. The case is clearly brought within the maxim of *"Expressio unius est exclusio alterius."* In other words, when special power of taxation is given, there is no power to tax raised by implication. *U. S. v. Macon Co.* 99 U. S. 582; *U. S. ex rel. Spitzer v. Cicero* (C. C.) 41 Fed. 83; *Cleveland v. U. S.* 49 C. C. A. 383, 111 Fed. 341. In the language of Chief Justice WAITE in *U. S. v. Macon Co., supra:*

"Every purchaser of a municipal bond is chargeable with notice of the statute under which the bond was issued. If the statute gives no power to make the bond, the municipality is not bound. So, too, if the municipality has no power, either by express grant or by implication, to raise money by taxation to pay the bond, the holder cannot require the municipal authorities to pay a tax for that purpose."

At this point we are confronted with the case of *Fowler v. Superior,* 85 Wis. 411, 54 N. W. 800, which was a case arising under the charter of 1891. The purpose of the action was to restrain the issue of a block of so-called "improvement bonds" on the ground that the city was already indebted up to the constitutional limit. A majority of the court concluded that the bond on its face imported an absolute indebtedness and general liability of the city, and that the city had authority, under the charter, to issue and pay such bonds. The charter of 1891 (ch. 124) varies in some details from the charter of 1889. It contains substantially the same restrictions as to the issue of general bonds, a fact that seems to have escaped the attention of the court. The provisions regarding "city improvements" are distinctly variant. The charter of 1891 (sec. 130) provides that, when a contract is let, it may provide that the amount chargeable to abutting real estate may be paid with certificates against the lots, or in im-

provement bonds, or *the proceeds of the sale of such bonds.*
There is no similar provision in the charter of 1889. Another
provision, not found in the older charter, is that any portion
or instalment of such bonds might be sold by the common
council at not less than par value. Sec. 133. The council
was authorized to insert such recitals in said bonds as were
necessary to show that they were chargeable to particular
property "and such other provisions as the common council
may think proper to insert." Sec. 132. The provision re-
garding the collection of a special tax was also somewhat dif-
ferent. There is some ground for saying that under the char-
ter of 1891 the plan of issuing improvement bonds contem-
plated that the city should put them in market as securities,
to the payment of which the faith of the city was pledged.
The charter differences are somewhat significant, and give
color, at least, to the conclusion reached. We cannot resist the
conclusion, however, that, had the court given due weight to
the restriction upon the general authority to issue bonds con-
tained in the charter, and to the fact that streets are to be im-
proved at the expense of the lotowner, and paid for by the col-
lection of a special tax imposed against his property, the
argument used in the opinion would never have prevailed. It
is with the greatest reluctance that we have reached a con-
clusion seemingly running counter to this case. The argu-
ments used to support it are indefensible under the charter of
1889. Whether improvement bonds issued under the char-
ter of 1891 are or are not good as a general city bond is not
a question now for decision. All we intend now to say is that,
notwithstanding what was said in the *Fowler Case,* we are
clearly of opinion that the council had no power under the
charter of 1889 to issue special improvement bonds as gen-
eral city obligations.

The bonds in suit are, therefore, not valid as general city
bonds, and cannot be sued upon as such, unless the city has
become estopped from setting up the facts. The bonds in

suit recite that they were issued by authority of ch. 16 of the charter, and that all. the acts, conditions, and things required to be done precedent to and in issuing of the bonds have fully happened and been performed in regular and due form as required by law. As said in *U. S. v. Macon Co.* 99 U. S. 582, every purchaser of such bonds was bound to take notice of the statute under which they were issued. Where there is an utter lack of power to issue bonds in the municipality, no recital can estop the defense of lack of power. Bronson, Recitals Mun. Bonds, 86; *Bogart v. Lamotte,* 79 Mich. 294, 44 N. W. 612; *Grant v. Reno,* 107 Mich. 409, 65 N. W. 376. See *Police Jury v. Britton,* 15 Wall. 566; *Travelers Ins. Co. v. Johnson,* 40 C. C. A. 58, 99 Fed. 663. A bond stating on its face the act under which it is issued is notice to the holder. *Comm'rs v. Call,* 123 N. C. 308, 31 S. E. 481. The foregoing and many other authorities that might be cited securely establish the proposition that, where there is lack of power to issue the bond, no recital contained therein will serve to prevent the municipality from setting up and relying upon the fact.

A further suggestion is made by appellant that the city is bound by ratification. It paid interest for a series of years, and made an agreement extending the time of maturity. As stated in *Clark v. Janesville,* 13 Wis. 415: "The very notion of ratification presupposes that the party ratifying might have done the act or made the contract." *Dullanty v. Vaughn,* 77 Wis. 38, 45 N. W. 1128, and *Trester v. Sheboygan,* 87 Wis. 496, 58 N. W. 747, approve of this doctrine. *Koch v. Milwaukee,* 89 Wis. 220, 62 N. W. 918, discusses the question of ratification of unauthorized acts, and says: "A municipal corporation may ratify the unauthorized acts and contracts of its agents which are within the scope of its corporate powers, and such ratification is equivalent to previous authority. The same principle is applicable in this respect to such corporations as to individuals, but subsequent ratification

cannot make valid an act beyond the scope of corporate authority. 1 Dillon, Mun. Corp. § 463, and cases cited in note 1; 15 Am. & Eng. Ency. of Law, 1102, and cases cited." *McGillivray v. Joint School Dist.* 112 Wis. 354, 88 N. W. 310, says that this power of ratification is subject to exactly the same limitations as the power to authorize in advance. That this is the prevailing rule, see Simonton, Mun. Bonds, § 247, and cases cited.

While holding, as we do, that the city had no authority to issue general city bonds to pay for special city improvements, and that for lack of such authority the city has not become bound by estoppel, it is not to be understood that the bondholder is entirely without remedy. The city, having collected the special assessments primarily designed to pay these bonds, may yet be liable to the holders for the sums so collected. That, however, is a matter for further consideration, as no recovery can be had on that ground under the complaint in suit.

*By the Court.*—The judgment is affirmed.