## JEWELL v. CITY OF SUPERIOR.*

(Circuit Court of Appeals, Seventh Circuit. October 6, 1904.)

1. MUNICIPAL CORPORATIONS—IMPROVEMENT BONDS—ASSESSMENT—COLLECTION
—DUTY OF CITY.

Where a city issued municipal improvement bonds and pledged assessments levied on property benefited therefor, it was not a guarantor of the bonds, but a mere statutory trustee for collection of such assessments, and was required only to exercise due diligence to collect the same according to law and enforce the lien thereof for the benefit of the bondholders, and was liable only for a failure to perform such duty or to pay over the money collected.

2. SAME—DELINQUENT ASSESSMENTS—RETURN TO COUNTY—STATUTES.

Rev. St. Wis. 1898, § 1114, providing that delinquent taxes returned by a city to the county shall belong to the county when the county levy is equal to or exceeds the amount of the delinquent taxes in the return, the excess, if any, when collected, to be returned to the city, applies only to the relations between cities and counties with respect to the collection of taxes, and does not affect the obligations existing between the city and holders of street improvement bonds with reference to the collection of special assessments applicable to payment of the bonds.

3. SAME—ASSESSMENTS RETURNED DELINQUENT.

Where delinquent special assessments applicable to the payment of street improvement bonds were returned by the city to the county as delinquent taxes, the city was only liable to account to the holders of local improvement bonds entitled to such assessments when collected for such as were received by the city from the county after collection.

4. SAME—EXTENSION OF TIME—EFFECT.

Where a holder of local improvement bonds issued by a city had knowledge of the law authorizing the city to extend time of payment of assessments applicable to such bonds at the time the assessments were extended, and when he contemporaneously extended the time of payment of the bonds to a corresponding date, and his lien was not lost by reason of the extension, the city did not thereby become absolutely bound for the payment of the bonds with reference to the collection of the assessments.

5. SAME—INTEREST.

Where a city was only a trustee for collection of local improvement assessments for the benefit of bondholders, it was only liable for interest on nonapplied collections at the rate paid to it by depositories holding the fund.

6. SAME—COLLECTION—APPORTIONMENT.

Where local improvement bonds were issued by a city, secured by a pledge of special assessments levied in payment of the improvement, a holder of such bonds was entitled to such proportion of the moneys collected by the city as the amount of bonds of each class held by him bore to the total amount of bonds issued against each of such improvements, less the sums previously paid him.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

The city of Superior, in the years 1890 and 1891, caused the improvement of Tower avenue and of Clough avenue in that city, and levied assessments upon the property benefited to pay the cost of the improvements. These assessments, in accordance with the provisions of the charter, were divided into five equal installments, with interest on the unpaid installments, and were inserted in the tax roll of the city for each of the years 1891 to 1895, inclusive. The total amount of assessments thus extended upon the tax roll

* Rehearing denied January 3, 1905.

were as follows: Tower avenue improvement, $49,906.06; Clough avenue improvement, $16,693.17. In the year 1891, pursuant to the authority of chapter 16 of its charter, the city of Superior issued its bonds, from the sale of which money was derived to pay the cost of the improvements. These were in the usual form of bonds, were payable July 2, 1898, and bore interest at the rate of 6 per cent. per annum, payable semiannually, as evidenced by coupons attached. The bonds recited that they were issued for the purpose of paying the cost of the construction of the improvement and on account of such assessment made upon the property abutting upon such avenues for such improvements as the owners had not elected to pay. Each bond contained a provision that the payment of the principal and interest of the bonds is made chargeable upon the property abutting upon the avenue stated in the bond. The amount of bonds thus issued was: Tower avenue, $42,439.60; Clough avenue, $14,129.75. Of these bonds appellant is the owner of Tower avenue bonds, Nos. 943 to 950 and No. 1,003, $4,439.60; Clough avenue bonds Nos. 1,522 to 1,541 and No. 1,542, $10,129.75. On July 2, 1898, the appellant, by agreement with the city, extended the time of payment of the bonds until July 1, 1908, and reduced the rate of interest to 5 per cent., payable semiannually, as evidenced by coupons then issued to him by the city, agreed to forbear suit until that date, gave the city the option of paying the bonds with accrued interest at any time prior to that date, and reserving to the holder the right to mature the principal of the bonds in case of failure for six months to pay any installment of interest due. All interest coupons due July 2, 1900, and prior thereto on all of the bonds were paid as they matured, and all coupons maturing January 2, 1901, upon bonds 1,526, 1,529, 1,542, were also paid, but no later coupons were paid. The appellant, prior to June 11, 1902, because of nonpayment of interest, exercising the option, returned matured the principal of the bonds. There were outstanding at the commencement of this suit of these bonds at face, Tower avenue bonds, $31,939.60; Clough avenue bonds, $12,129.75. The city had paid for the principal of canceled bonds and interest upon all the bonds as follows: Tower avenue bonds, $31,706.12; Clough avenue bonds, $9,175.66. During the years 1891 to 1895, both inclusive, of the assessments levied to pay for the improvement of Tower and Clough avenues, and extended upon the tax roll, there was paid to the city treasurer for principal and interest, prior to turning the delinquent tax roll to the county treasurer, Tower avenue $30,432.24; Clough avenue, $7,736.97. There was also paid during those years to the county treasurer of Douglas county on account of principal and interest on such assessments, as follows:

|  | Tower Avenue. | Clough Avenue. |
|---|---|---|
| Paid before tax sale | $ 2,010 62 | $ 904 86 |
| After time of payment | 193 90 | ......... |
| From the tax sales | 7,698 35 | 3,422 89 |
| From assignments of tax certificates by county | 2,465 50 | 1,388 90 |
| From redemption of assessments | 3,917 67 | 439 20 |
|  | $16,286 04 | $6,155 85 |

The practice with respect to delinquent taxes under the law was this: The city treasurer returned to the county treasurer all unpaid assessments in connection with the general taxes upon the same property each year in one lump sum, but the tax roll turned over at the time exhibits general taxes and special taxes separately extended thereon. No separate account was kept by the county treasurer of assessments returned delinquent, or of collections made by him. In each case assessments were commingled with the delinquent general tax. The city was charged by the county in the fall of the year with the state and county levies, and was credited in the spring with the amount of the delinquent roll. From time to time the county treasurer paid over moneys to the city treasurer as they were collected, and all such payments were in lump sums, not showing how much were special assessments and how much were general taxes, the payment being made on general account. The total amount of delinquent taxes and assessments returned by the city treasurer to the county treasurer for the years 1891 to 1901, were

$3,266,189.85. The total amount paid by the county treasurer to the city treasurer during the same period on account of delinquent taxes and assessments is $1,710,292.31, which includes $70,000 of school moneys received from the state. About $400,000 of the amount of taxes and assessments returned delinquent to Douglas county by the city of Superior were charged off for losses, and $175,000 still remains to the credit of the city on the county's books. The evidence does not disclose that any of the assessments here involved which were returned delinquent to the county, and afterwards collected by it, have been paid over to the city.

In the years stated, and during taxpaying time, moneys received by the treasurer of the city, whether for general tax or for special assessments, were deposited in bank from day to day in one lump sum, and during the same time this fund was drawn against by the city for its current expenses, no special care being taken to prevent encroaching on that part of the fund made up of special assessments; but upon the return of the delinquent roll to the county treasurer in each year the moneys collected by the city upon special assessments were by the city treasurer placed in a separate street improvement fund account; but no separate account was maintained of each particular improvement. Until 1902 the appellant was not advised that the funds were so deposited, and until March, 1900, did not know that the special assessments were not kept in separate accounts. The banks which acted as depositories of the city funds were to pay 4 per cent. interest upon deposits, and by a subsequent agreement of October 20, 1896, the rate was reduced to 1 per cent. Some of these banks failed during the panic, involving the loss of city deposits; but it does not appear that any of the assessments here involved were included in such loss.

In 1898, pursuant to chapter 184, p. 304, of the Laws of Wisconsin for the year 1897, $3,586.37 of the Tower avenue assessments and $1,343.24 of the Clough avenue assessments were divided into five equal installments, and extended and made payable in the years 1904 to 1908. The appellant was not consulted or notified with respect to this extension; but on or prior to July 2, 1898, the time when payment of the bonds was extended by him, he knew of the provision of law authorizing the extension of the assessments and of the practice of the city in extending assessments thereunder. This suit is brought for an accounting with respect to the fund in question, and for a decree against the city of Superior for the assessments collected by it applicable to the payment of appellant's bonds, and for the amounts which have been extended; and also for a decree against the city for the amount of his bonds and coupons, irrespective of any question of collection of the assessments upon the ground of its liability upon them. The latter ground was, however, subsequently waived; he asking no relief except such as he may be entitled to by reason of the acts or omissions of the city with respect to the assessments levied to pay for the improvements in which the bonds in suit were issued.

On March 5, 1904, the court below having found the facts as stated, and which are stipulated by the parties to be correct, decreed that the complainant below is entitled to recover from the city such proportion of the assessments actually received by it as the amount of bonds held by him on such improvement bears to the total amount of bonds issued on such improvements, to be determined by dividing the amount of assessments received by the city each year on account of such improvements, with interest at the rate received from the banks in which such assessments were deposited, namely, 4 per cent. until July 25, 1895, and 1 per cent. thereafter, by the total amount of bonds issued for each of such improvements with interest theretofore paid and still due thereon; that the amount due the complainant is to be determined by multiplying the amount of bonds held by him on each of the improvements with interest to date, by the ratio or percentage thus obtained, and deducting from the product all interest paid on the bonds held by him on each of the improvements prior to the extension of the time of payment, July 2, 1898; and decreed that he recover from the city the sum of $3,000, with interest at 6 per cent. per annum until paid. From this decree the complainant below appeals to this court, assigning for error: First. That the court erred in failing to decree against the city for the amount of assessments

returned delinquent to the county for collection. Second. In not permitting a recovery for the amount of assessments paid to the county treasurer of Douglas county, or for those assessments bought in by Douglas county and for which it took a deed upon the property assessed. Third. For failing to decree for the complainant for such unpaid assessments as the city had failed to collect. Fourth. In denying a recovery for assessments extended under chapter 184, p. 304, of the Laws of 1897. Fifth. Limiting the amount of recovery to his pro rata share of the fund to which the holders of all the bonds were entitled, claiming that a decree should have passed for the total amount of his bonds and interest. Sixth. That the court erred in limiting the interest to 4 per cent. prior to July 25, 1895, and to 1 per cent. thereafter; insisting that he should have recovered 6 per cent. from the dates of collection, because of the city's conversion of such sums at such dates. That, if not entitled to 6 per cent. interest, he should have been allowed 4 per cent. interest up to January 2, 1898, because the charter provided that such funds should be deposited in the bank at not less than that rate of interest, and the city failed to obtain that rate; and that upon sums collected by the city interest should be computed at 6 per cent. from January 2, 1898, the date of the maturity of the bonds. Seventh. The complainant also assigned for error that the court erred in its method of determining the amount that the complainant was entitled to recover.

Chester B. Masslich, for appellant.

Thomas E. Lyons, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts). We are not put to the necessity of determining the question of the personal liability of the city of Superior upon these bonds. With respect to somewhat similar obligations its liability was considered by us in King v. City of Superior, 54 C. C. A. 499, 117 Fed. 113, and by the Supreme Court of Wisconsin in Fowler v. City of Superior, 85 Wis. 411, 54 N. W. 800. The authority of the latter case is, however, somewhat shaken by the later case of Uncas National Bank v. City of Superior, 115 Wis. 340, 91 N. W. 1004. The appellant, the owner of the bonds in question, has, for the purposes of this suit, waived any claim thereon except for such relief as he may be entitled to growing out of the acts and omissions of the city with respect to the assessments pledged for the payment of the bonds. Therefore, within the theory of the bill and stipulation, the city is not a primary debtor, but merely the legal agent through whom the special assessments are to be collected. The municipality is statutory trustee for collection, bound to the exercise of due diligence to collect according to law, enforcing the lien through municipal machinery as agent of the owners of the bonds, and answerable for failure to perform this duty, or in paying over or in failing to pay the money collected. New Orleans v. Warner, 175 U. S. 120, 132, 20 Sup. Ct. 44, 44 L. Ed. 96. It is not a guarantor of collection; and, unless there be such failure in duty, there cannot be liability for noncollection. Roter v. City of Superior, 115 Wis. 243, 91 N. W. 651.

It is insisted that the city of Superior should respond for the assessments returned delinquent to the treasurer of the county of Douglas, from the fact of such return, and whether in fact collected or not. By the general law of the state taxes returned delinquent "shall belong to the county." But this is the rule only when the county levy is equal

to or exceeds the amount of delinquent taxes in the return. Any excess must, when collected, be returned to the city. Rev. St. Wis. 1898, § 1114. These provisions of law deal with the relations between cities and counties with respect to the collection of taxes, and do not affect the relations between the holder of street certificates or street improvement bonds and the city as trustee for collection. The latter is responsible for the due execution of its trust. It is not rendered liable because of the methods of accounting provided by statute as between itself and the county. It is liable for moneys collected by it, or, if collected by another branch of government, for such of those moneys coming to its possession under the law. Jenks v. City of Racine, 50 Wis. 318, 6 N. W. 818; Town of Iron River v. Bayfield, 106 Wis. 587, 82 N. W. 559. The case of Sheboygan County v. City of Sheboygan, 54 Wis. 415, 11 N. W. 598, does not, we think, sanction the claim here made. There was involved, as between the county and the city, the amount of a special assessment returned by the city as delinquent and charged back to the city. The opinion states arguendo that the holder of the certificate was entitled to the amount from the city treasurer so soon as the latter received credit from the county treasurer, because the city treasurer had retained the amount out of the taxes collected by him. It must therefore be that the amount of the delinquent return was less than the county levy. In the later case of The State ex rel. Donnelly v. Hobe, 106 Wis. 411, 82 N. W. 336, the charter provisions of the city of Superior were considered, and it was expressly ruled that these special liens constituted private property until actually discharged by payment to the owners, or to the respective officers of the law authorized to receive payment; that, if the county treasurer, after receiving the delinquent tax roll, collects the amount of the lien, he becomes trustee of the money for the owner or the holder of the lien, and that mandamus will lie in favor of the holder to compel payment from him. These special assessments are private property, and belong to the owners of the bonds, not to the municipality. The law requires that they should be carried out on the tax roll in separate columns opposite the respective lots affected. Although as a matter of bookkeeping, the total delinquent tax, whether composed of general tax or special assessments, or both, is returned to the county treasurer in a lump sum, the tax roll delivered to him with the return exhibits the special assessments in separate columns. There is no need of confusion, for upon collection by the county treasurer the particular assessment paid is checked off upon the tax roll. So that it is a matter of no difficulty to trace each assessment paid, and the law requires the county treasurer to pay to the owner the amount collected. Therefore it was held in the Hobe Case that mandamus would lie to compel the county treasurer to pay directly to the owner the assessment by him collected, without regard to his account with the city treasurer. None of these cases, as we read them, sanctions the theory that the city becomes liable simply because of the return of the tax as delinquent. They place liability upon the ground of the receipt of the moneys by the municipality or officer sought to be charged. These suggestions dispose of the first, second, and third assignments of error.

The fourth assignment asserts the right to recover for the assess-

ment extended under the provision of law. The extension of time for the payment of these bonds and the extension of time for the payment of assessments were substantially cotemporaneous, and corresponded as to the date of maturity. The appellant had knowledge of the law which authorized the extension, and knew of the practice of the city to extend assessments. These facts, with knowledge of the general financial condition of the city of Superior following the panic of the year 1893, might well lead to the inference that the appellant gave at least a tacit consent to, and exhibited a passive acquiescence in, the extension. However that may be, he has failed to show—indeed, he has not attempted to show—that any loss or harm has accrued to him by reason of the extension. The lien granted to him by the law is not lost. So far as the record discloses, it remains intact, and as available for his protection as it was prior to the extension.

The fifth assignment questions the action of the trial court in limiting the amount of his recovery to his pro rata share of the fund to which the holders of all the bonds were entitled. This fund, derivable from the assessments, was a trust fund, pledged to the payment of all of the bonds. The right of the appellant therein was only to such portion of the fund realized as the sum of his bonds bore to the entire amount of the issue of bonds. It is true that equity favors the vigilant, not the slothful; but we think it would be a manifest perversion of equity to require a trustee to commit a breach of trust owing to other cestuis que trustent, by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bonds in full. We know of no principal of equity which would warrant such a decree.

The sixth assignment has reference to the question of interest. The rate allowed was that which the city received from the depositories of the fund, and that usually is all that a trustee in like circumstances would be liable to pay. The insistence is based upon the theory that the city had converted the fund, but we are unable to concur in that contention.

Several assignments embodied in the seventh assignment in the statement of the case go to the manner adopted to ascertain the proportion of the fund due to the appellant. The method pursued is somewhat involved, but we need not be careful to determine its correctness, because, whether computed by that method or by any other known to us, the amount decreed is greater than the share of the fund due to the appellant. Compelled, under the stipulation, to view these bonds, not as obligations of the city for the payment of money, but as mere certificates to pay which the assessments are pledged, there is no liability upon the city for the payment of money, except for failure to put in force the machinery of the law to collect them, or to pay over the amount collected. One who is content to invest upon such security must take the hazard of collection under and according to law, and cannot hold the municipality as guarantor. Therefore the appellant here is only entitled to his pro rata share of the fund collected by the city, less the amount which he has already received. We have been unable to arrive at the result of the decree by the method of computation declared. The tables furnished by the appellee (the appellant has furnished none) show that upon the method of computation adopted by

the trial court the appellant had received more than he was entitled to, and that upon the theory that the city was chargeable with the moneys collected by the county (a theory repudiated by the court below) the appellant was entitled to $3,524.91, instead of the $3,000 decreed. We have adopted another method of computing the amount due him; one less involved, and possibly more nearly accurate. He is entitled to such proportion of the moneys collected by the city as the amount of bonds of each class held by him bear to the total amount of bonds issued against each such improvement, less the sums previously paid to him.

| | |
|---|---:|
| Thus he is entitled to 71.70 per cent. of the amount chargeable to the city with respect to Clough avenue improvement ($8,932.78), which would amount to ........................................ | $ 6,404 81 |
| And to 10.46 per cent. of the amount collected on the Tower avenue improvement ($35,270.89), which would amount to ................ | 3,689 34 |
| | $10,094 15 |
| Less previously received by him on both series of bonds ............ | 8,337 50 |
| | $ 1,756 65 |
| Adding interest at 6 per cent. from July 2, 1902, to date of decree, March 5, 1904 ............................................... | 177 36 |
| Making a total ......................................... | $ 1,934 01 |

—being over $1,000 less than he has been awarded by the decree. We should, of course, decree for any assessment collected by the county if the moneys so collected had been traced into the hands of the city treasurer; but the finding of the decree, stipulated to be correct as to facts, is to the contrary.

The decree must therefore be affirmed.