LEHIGH ZINC & IRON CO. *v.* NEW JERSEY ZINC & IRON CO.

*(Circuit Court, D. New Jersey.* September 23, 1890.)

1. COURTS—JURISDICTIONAL AMOUNT—QUIETING TITLE.
    For the purpose of determining the jurisdictional amount in a bill to quiet title, the whole value of the property, the possession or enjoyment of which is threatened by defendant, is the measure of the value of the matters in controversy.
2. EQUITY PLEADING—MULTIFARIOUS BILL.
    A bill alleged that complainant's title to certain ores claimed by it had been so thoroughly adjudicated that further litigation would be vexatious, and prayed that defendant might be enjoined from taking any proceedings to take said ores, or from disturbing complainant's title thereto. In another portion of the bill complainant claimed a statutory right to require the title or claim of defendant to the ores to be "now" set up, tried, and finally determined. *Held,* that the bill was multifarious.

In Equity.
*Charles D. Thompson, Richard Wayne Parker,* and *George Northrop,* for complainant.
*John R. Emery* and *Thomas N. McCarter,* for defendant.

GREEN, J. This matter comes before the court upon demurrer interposed by the defendant to the bill of complaint filed by the complainant. The demurrer is general, and the following causes were assigned as its justification:

"*First.* That the said bill is a bill filed in a circuit court of the United States, held in and for the district of New Jersey, and the complainant has not by its said bill shown the jurisdiction of the court, in that it has not averred or shown that the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars. *Second.* That the complainant in and by its said bill claims under two distinct and inconsistent rights, which cannot be joined in a single bill of complaint, and the discovery and relief sought by said bill relate to two several, distinct, and inconsistent rights, which cannot be joined in one bill; and especially that the complainant in and by one portion of its said bill alleges and claims that the title and rights of the complainant to the ores claimed by it in said bill have been finally settled and determined by the decrees, judgments, suits, proceedings, and acts mentioned in said bill, and that by virtue thereof the defendant is precluded and barred from setting up or asserting any right or claim to the said ores claimed by the complainant, and prays that the defendant may be perpetually restrained and enjoined from taking any action, suit, or proceedings in law or equity to take from it said ores, or from disturbing complainant's title thereto, and may be restrained from attempting to obtain possession of the said premises, or removing the ores, metals, and minerals claimed by the complainant. And, by another portion of said bill, the said complainant relies upon and sets up another, and a different, distinct, and inconsistent, equitable right or title, under the statute of the state of New Jersey, entitled 'An act to compel the determination of claims to real estate, and to quiet title to the same,' approved March 2, 1870, under which the complainant claims the right to require the title or claim of the defendant to said ores, claimed by the complainant, to be now set up, tried, and finally determined under said act, in this suit, and prays such distinct and inconsistent relief. And this defendant says that complainant's supposed right, based on the allegations that its right and title to said ores claimed by it hath been already finally settled and deter-

mined by said deeds, proceedings and judgments, decrees and orders, set out in said bill, cannot be joined with the supposed statutory right to have the claim and title of the defendant to said ores, now set out, tried and determined in this suit. *Third.* That the said bill is multifarious, in that it joins two separate and distinct causes of suit or action which ought not to be joined in one bill of complaint. *Fourth.* That the said bill is uncertain, in that it does not sufficiently state and disclose the nature of the equitable right or interest upon which the complainant relies for relief; and, especially, it does not especially and clearly appear by the bill whether the complainant claims that defendant should be perpetually enjoined from setting up any right or title to said ores 'claimed by complainant, on the ground that the right and title to the ores claimed by complainant has been already settled and determined by the decrees, judgments, orders, and proceedings set out in said bill, and should not be retried in the present or any other suit, or whether it relies upon a supposed statutory right to require the defendant now, and in this suit, to set up its title and claim to said ores, and to have the same finally determined in this suit, under the said statute. *Fifth.* That the said bill is vague and uncertain, and the equitable right upon which the complainant relies for relief is not stated with sufficient clearness. *Sixth.* That the complainant has not in and by its said bill made or stated such a case as does or ought to entitle it to any such discovery or relief as is thereby sought and prayed for, from and against this defendant."

When the matter was heard, the arguments of counsel took a very wide range, but I shall not attempt to judge of the merits of the case at this time. The only question now before the court is one of pleading, and to that I shall confine myself. I do this with the lesser hesitation, because very many of the statements and allegations made by counsel, and upon which very acute and learned arguments were founded, do not appear upon the record, in the condition it now is, and were in fact contradicted and denied, or affirmed and insisted upon, with equal tenacity by the respective counsel. The question then to be considered is, has the demurrer been well taken? The bill of complaint in its general aspect and tenor may be called a "bill of peace." The complainant avers that it is the rightful owner of certain ores, in a certain locality; that it is in full, peaceable, and quiet possession thereof; that its right and title to these ores have been derived from certain deeds of conveyance, leases, and agreements, and have been confirmed to it by formal adjudications of courts in actions in which they were the subject-matter of the litigation; that the defendant is threatening to disturb the complainant in the possession of this property by commencing suits in which the title of the complainants is to be attacked; that as the title of the complainant has been fully established and settled, especially by the judgments of courts of competent jurisdiction, any further litigation of the same title would be vexatious and oppressive, and should be restrained.

The first objection to this bill made by the defendant is that the matter in controversy does not exceed in value the sum of $2,000. It is well settled that the requisite value of the matters in controversy is a jurisdictional fact, and it must be properly averred in the bill, or the court will refuse to assume jurisdiction of the cause. There is in the complainant's bill an averment, in the language of the statute defining the

jurisdictional limits of this court, that the matters in dispute exceed the sum of $2,000, exclusive of interest and costs; but counsel for defendant insists that, notwithstanding such averment, the objection taken is fatal, because, if the case made by the complainant's bill is true, no pecuniary damage can accrue to it, for the suit threatened by the defendant would fall as utterly groundless. Without stopping now to invoke, in answer to this objection, the effect of a demurrer to the well-pleaded averment of a jurisdictional fact, it is sufficient to say that I think the proper criterion of the "value of the matters involved in the controversy" is to be found in the value of the property, the possession or enjoyment of which will be affected by the result of the litigation. For the purposes of this suit I should not hesitate to hold that the whole value of the property, the possession and enjoyment of which is imperiled by the threatening acts of the defendant, is the measure of the value of the matters put in controversy by it. If any other test than this should be substituted, very many suitors would be debarred from seeking the protection of the federal courts, and those tribunals would be stripped of a very important branch of their hitherto acknowledged jurisdiction, especially upon their equity side. What would become of suits for the reformation of a written agreement, for the cancellation of alleged forged or fraudulent deeds, for the specific performance of contracts to convey lands, and many others of like character, if, upon the question of jurisdictional value of the matters in controversy, the courts were limited to the pecuniary value of the deed, the contract, the agreement as such, and were barred from considering the value of the thing affected by, or the subject-matter of, those various writings. Take, for instance, the case of a forged deed of conveyance. Suits to compel the surrender and cancellation of such dangerous documents are not uncommon in the federal courts. But on what principle can jurisdiction be maintained if the question of the "value of the matters in controversy" be raised? What is the value of a "forged deed?" Simply nothing. If it be forged, it is absolutely valueless; but, for jurisdictional purposes, it must be held to have, to the rightful owner of the premises pretended to be conveyed by it, the whole value of the premises themselves, the possession and enjoyment of which are menaced and put in peril by its existence. The application of this test to the case at bar is obvious. It may, indeed, be true that the claims of the defendant to the property in possession of the complainant are groundless; it may be held that the deeds, leases, agreements, and adjudications of the courts, upon which and from which the complainant base and claim its right, are invulnerable to any attack which, in pursuance of its threats, the defendant may make. That will appear at the end of the litigation, but the "matter in controversy" is not the result of the litigation, but the property which will be affected by that result, and its value is the value which does or does not confer jurisdiction as it may be summed up. I do not think this cause for demurrer can be sustained

A more serious question is raised by the second and third causes of demurrer. It is insisted that as a pleading the bill is vicious, because

it is multifarious. Multifariousness means the joining together, improperly, in one bill of complaint, distinct and independent matters, and thereby confounding them. To render a bill of complaint liable to the objection, it must contain more than one good, distinct, and severable ground for the maintenance of a suit in equity, It is well-nigh impossible to lay down any rule or abstract principle as to what constitutes multifariousness which can be universal in application, but it may be said that a bill will be considered multifarious if the distinct and separate claims made in it are so different in character that the court ought not to permit them to be litigated in one suit. Two or more distinct objects cannot be embraced in the bill; its double character destroys it. Thus in *Reed* v. *Reed*, 16 N. J. Eq. 248, a bill asking an injunction to restrain waste, and also an account for rent due, was held demurrable on ground of multifariousness. Recent cases seem to show an increasing tendency to avoid the application of strict and technical rules of pleading to a bill objected to as multifarious, and to deal with the objection as addressed to the sound discretion of the court. Thus, in a late case, where from the bill of complaint it appeared that the complainant had in fact two causes of action, each furnishing the ground for a suit, one the natural outgrowth of the other, or growing out of the same transaction or subject-matter, and the defendant had interest in every question raised on the record, but the suit had but a single object, it was held that the causes were properly joined, and the bill was not for that reason multifarious. The only fair deduction to be made from this and other similar cases is that each case must be adjudged and governed by its own peculiar circumstances. The discretion of the court must be appealed to, but that discretion will be exercised always within the limits of the principles which govern good pleading.

Upon a critical examination of this bill of complaint it does appear to be open to the criticism which has been made upon it. The *gravamen* of the complainant's case is that its title to certain ores has been so thoroughly and satisfactorily adjudicated in this and other courts that no further litigation can be tolerated. If such litigation should be commenced, it would be unjustifiably vexatious, and should be enjoined. In other words, the complaint is that the defendant refuses to recognize the conclusive character of the proceedings by which complainant's title has been established, and threatens to bring a suit to reopen and retry issues which are *res adjudicata* by the solemn judgment of the court. The remedy which complainant seeks is the absolute prevention of the defendant's threat thus again to call in question his title. The prayer is for an injunction to accomplish that end. The very last thing that the complainant desires is a suit to determine whether the title to the property in question is in it or in its opponent. Its insistment is that there is no ground for such a suit; that the title to the property in question is forever removed from the forum of litigation, and cannot rightfully be brought back. And this is the solid basis of equity which underlies a bill of peace. When the title of a complainant has been finally adjudicated by a court of competent jurisdiction, and determined, it is

evident that a renewal of the litigation in the same or a different forum by the defeated party would be vexatious, inequitable, oppressive, and a court of equity will enjoin it. Hence, when a bill of peace is presented to the court, the sole issue is, has this title been finally settled as is alleged? It is the adjudication, and not the title, which the bill concerns itself with, and with which the court deals. If the court finds that the judgment relied upon does finally determine the title, it interferes to prevent the complainant being called upon again to maintain it. But the complainant, out of abundant caution, perhaps, or to meet some anticipated line of defense, seeks the aid of this court upon a different ground from that first stated. It invokes the statute law of New Jersey in its behalf, and appeals to the provisions and requirements of an act entitled "An act to compel the determination of claims to real estate in certain cases, and to quiet the title to the same," approved March 2, 1870. It is not necessary to quote this act. Its object is clearly and tersely stated by Chief Justice BEASLEY, of the supreme court of New Jersey, in *Jersey City* v. *Lembeck*, 31 N. J. Eq. 255. On page 272, the chief justice says:

"The inequity that was designed to be remedied grew out of the situation of a person in the possession of land as owner, in which land another person claimed an interest which he would not enforce; and the hardship was that the person so in possession could not force his adversary to sue, and thus put the claim to the test. The title of the act indicates that this is its purpose, for it is an act to compel the determination of claims to real estate."

This clearly expresses the spirit of the act. Its plain intent was to compel, in the way and by the method which it provided, a litigation of adverse claims to lands. He who boasted of an interest in or a claim to lands in the quiet possession of another must proceed to make that claim good, or suffer a judgment to go against him. The issue concerned the title to the lands. It was to be made up immediately. It was to be tried promptly. The result was to be final and conclusive. In invoking the aid of the statute, and in bringing itself within the protectorate of its provisions, the complainant seeks to compel a legal assertion by the defendant of any title it may have, or claim to have, in and to the property of which the complainant is in possession, so that the truth of such assertion may be litigated, and the validity of the title be determined, in the proper tribunal. Complying with the mandate of the act, the complainant, with the subpœna directed to the defendant in this cause, issued a ticket, describing with precision the property in question, stating the object of the suit, and that, if the defendant claims any title or interest to or incumbrance upon the lands, it is required to answer, but not otherwise; and in such ticket the object of the suit is stated to be to settle the title to lands thereinafter mentioned. This purpose, so formally declared, is manifestly inconsistent with and repugnant to the insistment of the complainant that the title to lands in question has been heretofore finally settled, and which final settlement justifies the bill, as a bill of peace. If there has been a final settlement, there can be no other settlement. If there has been no final settlement, there can

be no "*res adjudicata.*" A bill of peace requires the one. A bill for the statutory relief, under the act mentioned, requires the óther. In the one case, the claim of the complainant is that the defendant threatens to harass and vex it, injuriously and inequitably, by bringing a suit to test the validity of the complainant's title and possession of lands. In the other, the plaint of the. complainant is that the defendant will not bring such suit for such purpose. As to the first claim, the relief sought is for an enjoining order, absolutely restraining the prosecution of the. suit which is so vexatious. In the other, it is a mandate to compel the prompt and immediate prosecution of the suit which is ardently desired. Clearly, such claims are too contradictory and diverse to stand together. The demurrer is sustained for the cause alleged. As upon either branch of the case, as stated in the bill, complainant would have a *prima facie* claim to proper relief in a court of equity, it will be permitted to amend the bill, if it shall so elect, so as to avoid the charge of multifariousness, within 15 days; the injunction heretofore granted to stand until the further order of the court.