OLMSTED v. CITY OF SUPERIOR et al.

(Circuit Court, W. D. Wisconsin. August 15, 1907.)

No. 90.

1. MUNICIPAL CORPORATIONS—COLLECTION OF DELINQUENT SPECIAL CITY ASSESSMENTS BY COUNTY—RELATION TO BONDHOLDER.

Under Wis. St. 1898, § 1114, which provides that delinquent city taxes on real estate turned over to the county for collection, whether general or special taxes, become the property of the county, which is debtor to the city for the total amount thereof, a county to which a city has turned

over as delinquent taxes due on a special assessment pledged for the payment of improvement bonds does not become a statutory trustee for the benefit of a holder of such bonds, and he has no standing to maintain a suit in equity against it for an accounting.

2. SAME—DIVERSION OF TAXES COLLECTED—REMEDY OF BONDHOLDER—JURISDICTION IN EQUITY—REMEDY AT LAW—ADEQUACY.

A bill by a holder of improvement bonds issued by a city, which alleges that by the statute of the state the city is made a trustee to levy and collect special assessments on the property benefited by the improvement and to apply the proceeds solely in payment of the principal and interest of such bonds, and that it has diverted such proceeds to other purposes in violation of the statute and its duty as trustee and threatens to do so with future proceeds, states a cause of action for relief in equity against the city and which a court of law could not afford.

[Ed. Note.—Rights and remedies of holders of invalid municipal securities, see note to Chelsea Savings Bank v. City of Ironwood, 66 C. C. A. 235.]

3. EQUITY—PLEADING—MULTIFARIOUSNESS.

Where the Supreme Court of a state has expressly held that under a state statute a certain issue of bonds by a city created a general liability for their payment on the part of the city and also made it a statutory trustee for the collection and application on the bonds of a special assessment, a bill in equity by a holder of such bonds to enforce the duty of the city as trustee is not multifarious, because it also seeks to enforce its general liability by obtaining a judgment against it, which may properly be treated as incidental or supplementary to the equitable remedy sought and not inconsistent with it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 340, 341, 347.]

In Equity. On demurrers to amended and supplemental bill and motion for preliminary injunction.

This is a suit in equity against the city of Superior and the county of Douglas, based upon certain street improvement bonds of the city of Superior. The bill has been twice amended, and the demurrers involve the sufficiency of the amended and supplemental bill of complaint. Briefly stated, the bill of complaint sets forth the following facts:

By section 30, c. 124, p. 796, Laws 1891, the common council of the defending city was authorized to lay out, make, open, and keep in repair all highways and streets. This charter provides a scheme of special assessments upon abutting property to defray the expense of improvement of highways or streets. Section 132 authorizes the common council to issue improvement bonds, leaving a wide discretion to the common council as to the terms of said bonds. Section 133 provides that such bonds shall be semiannual interest coupon bonds, payable in annual installments, and shall draw interest at a rate not exceeding 6 per cent. Such bonds may be sold by the common council at not less than par, and the proceeds collected by the city treasurer shall be paid to the contractor when due to him, etc. Section 134 requires the city clerk to prepare a statement of the special assessment in which the bonds are issued, and record the same together with a copy of said bonds. Section 135 requires the city treasurer to pay the interest and principal of said bonds as the same become due, and charge the amount to the proper fund. Section 136 requires a special tax on said property benefited to be levied each year, sufficient to pay the installment and interest due on such bonds. Section 82 withdraws from the control of the common council the special fund for street improvement. Section 83 prohibits the city treasurer from encroaching upon said special fund, or diverting any part thereof to any other purpose.

By virtue of the provisions of this charter, the city undertook the improvement of Belknap street between Hammond avenue and West Seventh street in said city, and the necessary and proper steps required by the charter were taken to that effect. Special assessments were levied upon abutting prop-

erty, payable in equal annual installments during a period of five years. And thereupon the defending city caused to be executed and issued on the 1st day of September, 1891, bonds of said city for $54,739.80, comprising five equal series, designated as A, B, C, D, and E, each installment consisting of 11 bonds numbered from 1 to 11. Such bonds were sold in the market to provide the necessary funds to carry out such street improvement.

The following is a copy of one of such bonds, the others being the same except as to series and number:

"United States of America. Installment E.

"No. 1. $1,000.00.

"State of Wisconsin, City of Superior. Street Improvement Bond.
County of Douglas.

"Know all men by these presents that the city of Superior in the county of Douglas, and state of Wisconsin, for value received, hereby acknowledges itself indebted to and promises to pay the bearer hereof the sum of one thousand dollars lawful money of the United States of America, to be paid on the 1 day of September A. D. 1896, with interest thereon at the rate of six per centum per annum, payable semi-annually on the first days of March and September in each year as evidenced by the semi-annual interest coupons hereto attached, as they severally become due; both the interest and principal of this bond being payable at the National Bank of the Republic in the city and county of New York.

"This bond is issued under and by authority of chapter 13 of the amended charter of said city of Superior, being chapter 124, laws of Wisconsin for the year 1891, approved March 31st, 1891, and of a resolution duly passed, approved and published by the common council of said city, dated the 25 day of August A. D. 1891.

"This bond is one of an issue of annual installment bonds the aggregate amount of which is fifty-four thousand seven hundred thirty-nine 80/100 dollars of which this bond is number 1 of installment E, said issue being divided into five equal installments designated installments A, B, C, D, and E respectively. Each installment consists of 11 bonds numbered from 1 to 11 inclusive. Numbers 1 to 10 inclusive being of the denomination of one thousand dollars and numbers 11 of nine hundred forty-seven 90/100 dollars.

"All bonds in installment A are payable on the 1 day of September A. D. 1892 and the remaining installments in the order in which they are above mentioned become payable annually thereafter on the 1 day of September in each year, so that the last installment, namely, installment E becomes due and payable on the 1 day of September A. D. 1896.

Said bonds are issued for the purpose of defraying the cost of constructing the improvement on Belknap street between the Hammond avenue and West Seventh street and on account of such assessment, made upon the property benefited by reason of such improvement, as the owners have not elected to pay. The payment of the principal and interest of this bond is made chargeable upon the property benefited by said improvement, as evidenced by a statement and schedule of such special improvement, on which the bonds are issued, as recorded in the office of the city clerk of said city of Superior. And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuing of this bond have duly happened and been performed in regular and due form as required by law. The faith and credit of said city of Superior is hereby irrevocably pledged for the prompt payment of this bond, both principal and interest.

"In testimony whereof the said city of Superior in the county of Douglas, and state of Wisconsin, has caused this bond to be signed by its mayor and city clerk, and countersigned by its comptroller, and the seal of said city to be hereto attached this 1st day of September A. D. 1891.

"W. J. Dargis,      Martin Pattison,
"City Clerk.      Mayor.
"[Seal.] Countersigned: Lewis Larson, City Comptroller."

Coupons representing installments of interest were attached, which are in the usual form.

That complainant purchased and now owns all the bonds of series "E," aggregating $10,947.96. That by mutual agreement between the complainant and the defending city the payment of the principal of said bonds was extended until 1898. That said city regularly paid the interest upon said bonds up to the 1st day of January, 1901. That all the bonds of this issue have been paid except series "E," which are the bonds in suit. That the city has collected a large part of the assessments pledged to the payment of these bonds from time to time, but has neglected and refused to pay the complainant's bonds or any part thereof, or any interest thereon, since the 1st day of January, 1901. That without the consent of the complainant the city has extended the payment of the special assessments on the property benefited by the improvement, and that two annual installments of such assessments amounting to $5,000 are still to become due. That said city has from time to time turned over to the county of Douglas these unpaid special assessments as delinquent taxes, in accordance with the laws of Wisconsin, which require the return of such delinquent special assessments at the same time and in the same manner as other taxes are returned. That said county of Douglas has from time to time collected considerable sums of money upon such special assessments so returned as delinquent, by sales of the property, by redemption thereof after sale, etc. That said county now has on hand in its treasury a considerable amount of money as the proceeds of such delinquent special assessments, which said county refuses to account for or pay over to the complainant in liquidation of said bonds. That the city of Superior has from time to time unlawfully and in fraud of the rights of this complainant encroached upon and appropriated the sinking fund which was created for the payment of the bonds in suit. That by resolution of the common council of said city such special assessment funds have been transferred to the general fund for various purposes. That by act of said common council said sinking fund so specially devoted to the payment of the complainant bonds has been rehypothecated for the payment of other improvement bonds, and that by various methods the city has dissipated and misapplied the fund which, by the terms of the bond in suit it undertook to keep and administer as a statutory trustee for the benefit of the complainant to pay the bonds in suit. That unless restrained said city will divert and misappropriate the balance of said fund still remaining in the city treasury, and the deferred payments of special assessments which are yet to become due. That when the city ceased the payment of interest on said bonds, the complainant elected, pursuant to the terms of said bond, to declare the same due and payable. That said bonds are in law a general obligation of said city, and that said city should be held in law to be a primary debtor as well as a statutory trustee. The bill sets up that before complainant purchased said bonds the Supreme Court of the state of Wisconsin had held said bonds to be a general obligation of the defendant city.

The complainant by his bill asks for an accounting to ascertain and determine the amount of money which the county of Douglas and the city of Superior have in their respective treasuries which ought to be applied to the payment of the bonds, and also the amount of such sinking fund that has been misappropriated; that the complainant recover the amount of all sums collected of or on account of said Belknap street assessment by said city, not heretofore applied to the payment of other bonds of the Belknap street issue. The bill contains a further prayer that said city of Superior be held liable for the whole amount of the complainant's bonds and interest, by reason of the general obligation of said city to pay said bonds and coupons as its general indebtedness, by reason of the city's misappropriation and conversion of said Belknap street assessments to its own use, and its failure to provide a fund in which said assessments should be set apart and reserved for the payment of said Belknap street bonds.

The bill prays recovery against the county of Douglas for the amount of the Belknap street assessment collected by said county, either directly or by the redemption of certificates of sale for such assessments. The bill contains a prayer for a temporary injunction restraining the city from paying out any further sum from the street bond sinking fund, except upon the complainant's bonds or coupons, from using or appropriating any moneys which may be

hereafter collected on account of said Belknap street assessment, and that such injunction may be perpetual.

The county of Douglas demurs separately to the supplemental amended bill, on the ground, amongst others, that the bill is without equity as to the said county of Douglas.

The city of Superior separately demurs to the whole supplemental amended bill on various grounds, which will be stated in the opinion.

Chester B. Masslich and H. E. Ticknor (Eugene Dupee, of counsel), for complainant.

William R. Foley, for the county of Douglas.

Louis K. Luse, for the city of Superior.

QUARLES, District Judge (after stating the facts as above). The defendant county of Douglas was made a party to the amended bill of complaint, and then interposed a separate demurrer thereto. The court sustained the demurrer; but the complainant, having obtained leave of the court to file a supplemental bill, retained the county of Douglas as a defendant, and added certain new and additional averments. The county again demurs to the supplemental bill. This demurrer must be sustained, upon the same ground upon which the former ruling was based, namely, that such supplemental bill presents no equitable cause of action against the county of Douglas.

The theory of the bill is that all proceeds from such delinquent special assessments as came to the treasury of the defending county belonged to the holders of such special improvement bonds; that the county as well as the city was its statutory trustee to collect these delinquent taxes, and should be held to account accordingly. I am satisfied that this theory is erroneous.

Complainant's contention is practically foreclosed by the Supreme Court of Wisconsin in the case of Sheboygan v. Sheboygan, 54 Wis. 415, 11 N. W. 598. It is elementary that the decision of the highest court of Wisconsin construing a Wisconsin statute will be followed by the federal court. By section 1114, St. Wis. 1898, it is expressly provided that such city taxes, when turned over to the county as delinquent, shall belong to the county and be collected for its use, and such section is applicable to cities. The city is entitled to credit for the total amount of delinquent taxes of every name and description as soon as the same are turned over. The court holds:

"The city by the return of its treasurer having transferred to the county the duty under the statute of enforcing payment of delinquent taxes on land, also passes to the county all interest in such taxes when collected, or interest in the land when sold for nonpayment of the tax, and should be credited with the amount of such taxes, paying over the balance only to the city."

Further on the court say:

"The return may include state, county, town or city, ward, school, or road tax, or any special assessment whatever, authorized by law. These are not separately returned, but all unpaid taxes of every description on a given parcel of land are massed, and the aggregate amount of all is alone stated in the delinquent return."

The principle of the statute is that the county, having given the city credit for the total amount of delinquent taxes, shall assume all such delinquent taxes of every nature which have been legally levied

in the several towns and municipalities of the county which, like the defendant city, fall under the general statute; and the county reimburses itself out of the proceeds of the sales for such delinquent taxes, or out of the lands sold, in case the county is the purchaser.

By virtue of section 129 of the charter of the city of Superior, a rule is established as to improvement certificates, which has no application to improvement bonds, and this distinction is controlling. The section reads as follows:

"The comptroller's statement of the special assessment to be placed in the next tax roll shall include an amount sufficient to pay said certificates, with interest at the legal rate from the date of such certificates to the time when the city treasurer is required to make return of delinquent taxes, and thereafter the same proceedings shall be had as in case of other taxes, except that all moneys collected by the city treasurer, and all moneys collected by the county treasurer or county clerk on account of such taxes, shall be delivered or paid to the owner of the same on demand, upon the surrender of such certificates."

This section of the charter has been construed and commented upon by the Supreme Court of Wisconsin in State ex rel. v. Hobe, 106 Wis. 412, 82 N. W. 336. The court recognizes this special charter provision as constituting the county treasurer a statutory trustee for the holder of the improvement certificates. There is no similar provision relating to improvement bonds. The bondholder must look to the sinking fund in the hands of the city treasurer, upon which the bond is made a lien.

There being no contractual relations between the complainant and the defending county, and there being no statutory provision making the county treasurer an agent or trustee for the bondholder, the bill presents no equitable case against the county of Douglas, and as to it the demurrer must be sustained for want of equity, and as to said defendant the bill is dismissed, with costs.

Second. This brings us to the consideration of the demurrer to the whole supplemental bill interposed by the city of Superior. The grounds of demurrer are: First, that complainant has a plain, adequate, and complete remedy at law, and that there is no equity in the bill; second, that the bill is multifarious, in that it joins allegations and prayers for relief against the city of Superior for general liability on the bonds in question, with allegations and prayers for relief, and for an accounting and recovery of moneys collected by said city, and also by the county of Douglas upon the special assessment; third, that said bill is multifarious in that it joins, or attempts to join, causes of action at law with causes of action in equity; fourth, that the bill is multifarious in that it joins, or attempts to join, causes of action, allegations, and prayers for relief against the city of Superior, for the full amount of the bonds, as a legal liability in which the county of Douglas has no concern, with allegations and prayers for relief by way of an equitable cause of action to reach moneys collected by way of assessment by both city and county; fifth, that said bill is multifarious in that it joins causes of action and prayer for relief against the city of Superior upon its general liability upon the bonds, assuming such bonds to create a general liability, with allegations and prayers

155 F.—12

for relief that the city is not so liable, but is liable as trustee for collection, safe-keeping, and payment over of said special assessment; sixth, that said bill is multifarious in that it prays for alternative relief both in law and equity, which are on their face contradictory and inconsistent, and that there is a misjoinder of causes of action and misjoinder of parties defendant. Counsel on all sides have displayed such industry and learning in the argument of this cause, the court feels called upon to discuss the several contentions at somewhat greater length than it would ordinarily do.

The first ground of demurrer requires but slight attention. The supplemental bill of complaint, as we read it, is properly planted in equity, and a court of law could afford no adequate relief in the premises. From the bill it satisfactorily appears that the city assumed the duty to create, administer, and distribute a certain fund derived from special assessments on certain real estate, which fund was pledged for the payment of these bonds; that thereby the city became a statutory trustee, bound to preserve this fund and administer it solely and exclusively for this special purpose; that in violation of this duty the defending city has by various methods particularly set out in the bill, encroached upon, appropriated, and misapplied the fund, and has neglected and refused to pay the bonds in suit that were made a lien upon such fund; that two installments of such special assessments, amounting to $5,000, are to become due, and that unless restrained the city will divert and misappropriate the same; that the city has, in violation of its duty, assumed to rehypothecate this fund for the security of other city bonds not connected with the bonds in suit, and that a portion of said fund has been applied upon such other bonds; that $12,000 has been drawn out to pay a bonus for the location of a normal school; that an accounting is necessary to ascertain the true amount of money the city has actually received which properly belongs to such fund, and how much has been unlawfully diverted therefrom. It is apparent that complainant is entitled to relief, which it is the peculiar province of equity to afford, and that a court of law would be powerless in the premises. The following cases cited by complainant's counsel treat of these principles in analogous cases: Vickrey v. Sioux City (C. C.) 104 Fed. 164, 166; Same case on appeal (C. C.) 115 Fed. 437; Farson v. Sioux City (C. C.) 106 Fed. 278.

Is the bill multifarious? This case does not fall within the definition of multifariousness usually adopted. Certainly not under the test applied by the Circuit Court of Appeals for this circuit in Von Auw v. Chicago T. F. Co. (C. C.) 69 Fed. 448. There can be no pretense that this bill embodies two distinct causes in equity either one of which might sustain a separate bill, and this seems to be the test usually applied. The real objection seems to be that there is a misjoinder of two causes of action which are not compatible, because one is legal in its nature and the other is equitable. In other words, the complainant insists that by the terms of these bonds the city of Superior is a primary debtor as well as a statutory trustee; that its faith and credit have been pledged generally for the payment of the bonds, and he has included in his prayer a demand for a money judgment.

It has been held by the Supreme Court of Wisconsin in Fowler v. Superior, 85 Wis. 411, 418, 54 N. W. 800, that these bonds and accompanying coupons are issued on the faith and security of said assessment; but there is no condition that the bond shall be payable only out of that fund. In other words, that the city has obligated itself generally to pay the bonds, and has also pledged its faith to provide a sinking fund which shall be an additional resource and security for the faithful fulfillment of its promise. There is no conflict of authority between the Fowler Case, supra, and Uncas National Bank v. Superior, 115 Wis. 349, 91 N. W. 1004, because the bonds were issued under different statutory provisions. This is clearly pointed out in the opinion of Judge Seaman in White River Savings Bank v. Superior, 148 Fed. 4, 78 C. C. A. 169. See, also, King v. Superior, 117 Fed. 115, 54 C. C. A. 499. The language of the opinion in Jewell v. Superior, 135 Fed. 22, must be read in connection with the fact that by virtue of a stipulation in that case resort should alone be had to the sinking fund and to the liability of the city as statutory trustee, and any claim based on general liability of the city was expressly waived. If the underlying statute authorized the issuance of such a bond, the reasoning by the Wisconsin court in the Fowler Case has been indorsed by the federal courts. United States v. County of Clark, 96 U. S. 214, 24 L. Ed. 628; United States v. Ft. Scott, 99 U. S. 152, 25 L. Ed. 348; United States v. Saunders, 124 Fed. 124, 130, 59 C. C. A. 394; King v. Superior, 117 Fed. 115, 54 C. C. A. 499. But it is not for us to consider whether the Fowler Case was correctly decided. We must adopt its construction of a local statute, and therefore must proceed upon the theory that these bonds impose general liability upon the defending city.

Does the averment of general liability of the city in connection with the equitable cause of action create such a misjoinder as would render the bill multifarious? Both obligations inhere in the bonds, and the pleader has correctly stated their legal effect. Under the authorities the difficulty may be resolved, if the assertion of general obligation may properly be treated as incidental to the equitable remedy sought by the bill. As we read this complaint, its primary purpose is to work out the conservation of a special fund to which the bondholder is entitled to resort by way of security, and thus an accounting is rendered indispensable.

It is strenuously contended by defendant's counsel that under the averments of this bill the claim for legal damage is primary and not subordinate, and that the case falls within the doctrine of Cherokee Nation v. Kansas Ry., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295, and Hurt v. Hollingsworth, 100 U. S. 100, 25 L. Ed. 569. These two cases are clearly distinguishable. In the former the bill presented in the alternative two distinct aspects that were irreconcilable. An injunction was prayed on the ground that the railway company had not sufficient authority to take the land, while at the same time asking damages on the theory that the taking was lawful. It was obvious that, if the equitable cause of action failed, the strictly legal action was not available in the equity tribunal. In the Hurt Case, supra, the complication arose under the Texas practice act.

The complainant's bill was to remove a cloud from the title to real estate, which was purely equitable, but under the state practice the defendant had interposed a claim of legal title to the land and demanded damages such as are awarded in an action of ejectment. The cause having been tried in the state court without objection, the question was whether the federal court on obtaining jurisdiction could tolerate the two conflicting claims in the same suit. Manifestly the legal counterclaim had no standing in the equity suit. Here there is no demand for alternative relief predicated upon inconsistent theories and diverse facts, but a well recognized equity suit, based upon certain bonds, which were a lien on a special fund, coupled with an assertion of an additional legal remedy growing out of the same transaction, springing from the same bonds, which the court is asked to employ if necessary to do complete justice between the parties. The right to resort ultimately to the general liability and general funds of the city is guaranteed by the law and by the terms of the bond, but it must be regarded as an incidental or subsidiary remedy, in that it does not come into play unless and until the primary equitable remedy shall have been exhausted either in whole or in part.

If the court, by means of the peculiar remedies of equity, shall succeed in recruiting and conserving the special assessment fund, so that the complainant's bonds may be liquidated, there will then be no outstanding cause of action either legal or equitable. But on the other hand, suppose that after such sinking fund has been applied and all equitable remedies have been exhausted, a balance still remains due and unpaid; may not the court, having settled the rights and equities of the parties, retain jurisdiction to do complete justice and to render final judgment against the city for the amount still due on the bond? The authorities are so numerous which recognize such authority as residing in a court of equity that we can cite but a few of those collected by complainant's counsel.

The familiar doctrine is thus stated in 1 Pomeroy's Eq. Juris. § 181:

"When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue, and may thus establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority." Pacific R. R. v. Atlantic Ry. (C. C.) 20 Fed. 277, 280; Patton v. Glatz (C. C.) 56 Fed. 367; Krohn v. Williamson (C. C) 62 Fed. 869, 877; Burlington Bank v. Clinton (C. C.) 106 Fed. 269; Ward v. Todd, 103 U. S. 327, 26 L. Ed. 339; Phosphate Mining Co. v. Bradley, 105 U. S. 175, 26 L. Ed. 1034; Beecher v. Lewis, 84 Va. 630, 6 S. E. 337; Robinson v. Cross, 22 Conn. 171. See, also, Continental Ins. Co. v. Garrett, 125 Fed. 589, 593, 60 C. C. A. 395.

There is such conflict and confusion in the authorities as to what constitutes multifariousness that it is impossible to lay down any exact rule. As Mr. Foster in his work on Federal Practice (Fed. Pr. 206) says: "The cases upon the subject are extremely varied, and the court in deciding them seems to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule." It is a subject largely controlled by the discretion of the court. Certain it is, however, that if a good equitable cause of action has been stated in the bill, no error of judgment on the part of the pleader, either in giving undue prominence to a mere sub-

ordinate remedy, or in framing a prayer which confuses legal distinctions, will prove fatal on demurrer. No such erroneous legal conclusions will conclude the court or render the bill multifarious. De Neuville v. N. Y. Ry., 81 Fed. 10, 13, 26 C. C. A. 306; Brown v. Guarantee Trust Co., 128 U. S. 412, 9 Sup. Ct. 127, 32 L. Ed. 468; Lehigh Zinc & Iron Co. v. N. J. Z. & I. Co. (C. C.) 43 Fed. 548. Here there is but one cause of action, and that is for the recovery of the amount due on the bonds; but the bonds and the statute under which they were issued offer two remedies, or two methods of enforcement, one in personam, and one by way of security. Shall not both be available when a court of equity has properly assumed jurisdiction?

Upon the argument great reliance was placed upon Plankinton v. Hildebrand, 89 Wis. 214, 61 N. W. 839. A careful examination of the facts will show that the case is not in point, and that it was expressly distinguished by Mr. Justice Pinney in his opinion. There two separate and distinct causes of action were insisted upon—one the foreclosure of a pledge of chattels, and the other the contingent liability of certain of the defendants as indorsers of a promissory note evidencing the debt. If all the defendants had fallen under the same legal liability on the note, a different conclusion might have been reached, as appears from the earlier case of Wilson v. Johnson, 74 Wis. 337, 339, 43 N. W. 148, where in an equity action to foreclose a pledge of chattels, a judgment for deficiency was sustained on general principles without the aid of any statute. That the Supreme Court of Wisconsin is in accord with other courts on the general doctrine above announced appears by reference to Turner v. Pierce, 34 Wis. 658, and Pinkum v. Eau Claire, 81 Wis. 301, 51 N. W. 550.

Perhaps no better or more authoritative statement of the rule can be found than the case of Clews v. Jamieson, 182 U. S. 480, 21 Sup. Ct. 845, 45 L. Ed. 1183:

"It often happens that the final relief to be obtained by the cestui que trust consists of the recovery of money. This remedy the court of equity will always decree, when necessary, whether it is confined to the payment of a single specific sum, or involves an accounting by the trustee for all that he has done in pursuance of the trust and a distribution of the trust moneys among all the beneficiaries who are entitled to share therein."

We recall the vigorous language of Lord Chancellor Nottingham in Parker v. Dee, 2 Ch. Cr. 200: "And when this court can determine the matter, it shall not be handmaid to the other courts nor beget a suit to be ended elsewhere."

The fifth ground of demurrer is that the bill is multifarious because it attempts to join a cause of action involving the general liability of the city with one based upon the trust relation arising out of the contract and the circumstances of the case. It is sufficient to say that there is not here disclosed such trusteeship as to make the objection pertinent. The trust relation here is constructive merely, and such as the court of equity has invented to work out justice in a large class of cases where the strict accountability of the trustee is imposed to extend the remedial power of the court. 1 Pomeroy Eq. Juris. §§ 155, 157, 158.

For these reasons the demurrer of the city of Superior is over-ruled, and said defendant may interpose an answer to the bill, if so advised, on or before the October rule day. Otherwise, complainant will be entitled to a decree.

From the propositions above laid down it follows that the complainant is entitled to a preliminary injunction against the city of Superior pendente lite, substantially as prayed in the bill. Complainant's counsel will however prepare such preliminary injunction and submit the same to counsel for the city before presenting the same for signature.